[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 800 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 801 
{¶ 1} Defendant-appellant, D.H., a juvenile, appeals from the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, wherein the juvenile court, pursuant to a jury trial, adjudicated appellant a delinquent by reason of having been found guilty of two counts of reckless homicide, a third-degree felony, with firearm specifications, in violation of R.C. 2903.041 and2941.145, respectively.
 {¶ 2} The Franklin County Grand Jury indicted appellant on (1) one count of murder with a firearm specification, in violation of R.C. 2903.02(A) and 2941.145, respectively; (2) one count of felony murder with a firearm specification, in violation of R.C. 2903.02(B) and 2941.145, respectively; (3) two counts of attempted murder with firearm specifications, in violation of R.C. 2923.02 (as it relates to R.C. 2903.02) and 2941.145, respectively; and (4) two counts of felonious assault with firearm specifications, in violation of R.C. 2903.11 and 2941.145, respectively. The charges stemmed from a December 27, 2004 incident. In particular, the murder and felony murder counts pertained to the death of Kiera Harris ("Kiera"). Likewise, the attempted murder and felonious-assault counts pertained to injuries sustained to Preston Smith and Brandon Russell. Additionally, each count specified that appellant, being 15 years old at the time of the offenses, used a firearm and therefore was subject to a serious-youthful-offender sentence. A serious youthful offender is subject to a sentence prescribed under both juvenile and adult sentencing guidelines. See R.C. 2152.11 and 2152.13.
 {¶ 3} Appellant's case was originally scheduled in the criminal division of the Franklin County Court of Common Pleas, which transferred the case to the juvenile division upon motion of plaintiff-appellee, the state of Ohio. The court recognized that pursuant to R.C. 2152.13, serious-youthful-offender cases are tried in juvenile court. Thereafter, appellant invoked his jury-trial rights provided under R.C. 2152.13(C)(1), which applies to a juvenile being tried as a serious youthful offender. *Page 802 
 {¶ 4} At trial, Smith testified to the following on appellee's behalf. On December 27, 2004, Christopher Harris ("Harris") called Smith on Smith's cell phone. After the phone conversation, Smith and his friends drove to Harris's house to engage in a fistfight with Harris and his friends. Neither Smith nor his friends brought a firearm. Harris came out of his house when Smith and his friends arrived. Harris was with a group of friends, including appellant. The fistfight began, and during the fight, appellant "went up on the porch," pointed a firearm, and shot Smith in the leg.
 {¶ 5} On cross-examination, Smith verified that at the time of the December 27, 2004 incident, Harris was a high school freshman, Smith was a high school senior, and Smith's friends "were all either [Smith's] age or older." Smith also testified on cross-examination that before the fight, Kiera asked Smith and his friends whether they had any firearms.
 {¶ 6} Sean Black testified to the following on appellee's behalf. Black was part of Smith's group that fought with Harris on December 27, 2004. During the incident, Kiera "ran up and said that nobody is going to jump her brother," Harris. Ultimately, Black heard gunshots coming from a porch.
 {¶ 7} Russell was also part of Smith's group and testified that during the December 27, 2004 fight, he heard gunshots "coming from [a] house." Russell also testified that after hearing the gunshots, he noticed bullet holes in his clothes.
 {¶ 8} Erick Golden was also part of Smith's group and testified to the following on appellee's behalf. During the December 27, 2004 incident, Kiera "said don't bring no guns." Golden responded: "[W]e don't have no guns." Ultimately, appellant started shooting from a porch.
 {¶ 9} Keisha Harris ("Keisha") is the sister of Harris and Kiera. Keisha testified to the following on appellee's behalf. During the December 27, 2004 incident, Keisha was on her front porch with appellant when she heard gunshots. Thereafter, she noticed that Kiera had been injured. Later that night, appellant told Keisha that he had shot one of the fight participants in the leg and told her not to tell anyone that he had shot the firearm.
 {¶ 10} Harris testified to the following on appellee's behalf. On December 27, 2004, Eric Green called Harris on his cell phone and stated that Smith wanted to meet Harris to fight. Meanwhile, Harris asked appellant to come over to his house, and he obtained his father's firearm. Harris then gave appellant the firearm when appellant arrived. Thereafter, Smith and his friends arrived, and Smith told Harris to "come and fight." Harris did not want to fight, because an unidentified person with Smith had a firearm. Nonetheless, Harris told Smith "to come by [his] house in the middle of the street if he wanted to fight." Smith *Page 803 
and his friends walked up to Harris, and Russell hit Harris. After a fight ensued, Harris heard gunshots. At the time, Harris saw appellant pointing the firearm "at the air." After the gunshots were fired, Harris ran back to his house. At the house, appellant gave the firearm to Harris's father. Later, Harris found Kiera injured outside the house. Also, on the night of the incident, Harris noticed that appellant's brother, Jordan, had a firearm and someone threw it under an automobile.
 {¶ 11} Deputy Coroner Collie Trant testified that Kiera died from a gunshot that pierced her lungs, aorta, and "the tissues that surround the heart." Dr. Trant also verified that only one bullet caused Kiera's wounds.
 {¶ 12} Darius Edwards testified that he spoke with appellant the night of the shooting. According to Edwards, appellant admitted that he shot "one of those other guys."
 {¶ 13} Darius Schultz testified to the following on appellee's behalf. On December 27, 2004, Schultz was at Harris's house, and Harris called Smith on speaker phone. Harris stated: "I'm going to give you a chance to apologize and we can drop everything." Smith responded: "[N]o you got me f'd up" and hung up the phone. Thereafter, Smith called back and stated that he wanted to fight with Harris. Thus, Harris obtained his father's firearm and called appellant. Appellant then came to Harris's house. Ultimately, Smith and his friends arrived, and Schultz went outside with Harris and the other persons with Harris, including appellant. While outside, appellant had the firearm that Harris previously obtained. Smith and his friends tried to jump Harris, and appellant stated: "[H]old up." Schultz then heard gunshots and, ultimately, ran to Harris's porch, where he found appellant with the firearm. While appellant and Schultz were on the porch, Smith and his friends ran toward the porch, and appellant shot the firearm. Schultz admitted that he initially told law-enforcement officers that appellant had not shot the firearm.
 {¶ 14} Gary Wilgus from the Ohio Bureau of Criminal Investigation and Identification ("BCI") testified that when he searched Harris's house after the incident, he found the firearm used during the incident. Wilgus testified that the firearm had a slight vinegar smell. Next, Wilgus testified that his office tested the firearm for fingerprints, but his office found no identifiable latent fingerprints on the gun. Wilgus also testified that the crime scene was snowy and that it is "difficult to preserve the integrity of a snowy crime scene.
 {¶ 15} Eric Green testified to the following on appellee's behalf. Green was socializing with Harris and his friends on December 27, 2004, at Green's house. Ultimately, Green drove Harris and his friends to Harris's house. Next, Green went to Golden's house. While Green was at Golden's house, some persons made "a couple phone calls." Thereafter, the persons at Golden's house went to *Page 804 
Harris's neighborhood. While at Harris's neighborhood, Green heard gunshots and surmised that the shooting came from one firearm.
 {¶ 16} Franklin County Sheriff Detective Drew McEvoy testified that he and other detectives interviewed appellant after the December 27, 2004 incident. The detectives recorded the interview. Appellee played the recording at trial, and the interview included the following statements:
 [Appellant]: * * * I came outside, saw everybody all fighting and stuff, went back inside and got the gun —
 Detective Scott: Where'd you get the gun from?
 [Appellant]: * * * [U]nder [Harris's] mattress, but he * * * got it from out of his dad's car. * * *
 * * *
 [Appellant]: And I went back and got the gun. I came back outside. I saw everybody, I saw [Harris] getting jumped. I fired three shots. That's all I can remember. Everything was going so fast. * * * [M]aybe I did empty the clip more than I thought I was. Stuff was going by so fast. Maybe — I couldn't remember. I don't know.
 Detective Scott: So you had a friend that was getting beat up.
 [Appellant]: Yes, getting jumped.
 Detective Scott: And you felt that the way to protect your friend was —
 [Appellant]: Was to try [to] scare them away.
 * * *
 [Appellant]: * * * Then I shot and then they all ran. And then I * * * heard a shot and I hurried up and ran inside.
During the interview, appellant also stated that he "fired toward the ground." Lastly, Detective McEvoy testified that law-enforcement personnel did not test appellant for gunshot residue, because "[a]t the time that we developed him as a suspect we were probably seven hours from the shooting."
 {¶ 17} Daniel Davison from BCI testified to the following on appellee's behalf. Davison examined gunshot-residue samples from Schultz's and Kiera's hands. Davison found no gunshot residue from Kiera's hands, but Davison found residue from Schultz's left hand. According to Davison, the gunshot residue may be found not only on the "hand of a person firing a gun," but "on anything in the vicinity" of a fired weapon.
 {¶ 18} During closing arguments, appellant's trial counsel argued that the evidence failed to put the gun on appellant and that "it doesn't even make sense that it was on him." Appellant's trial counsel also argued that law-enforcement investigators "never tried to find out if these kids could pick out the shooter. *Page 805 
* * * And here we are 11 months later and now they are identifying that guy." Furthermore, appellant's trial counsel argued that no physical evidence linked appellant to the offenses, e.g., "[n]o gunshot residue, no prints, no nothing." Likewise, appellant's trial counsel tried to discredit appellant's confession, saying: "[L]isten to the tape * * *. But then try and line it up with what happened, and you know what, it doesn't line up. None of it lines up. None of it makes sense." Appellant's trial counsel stated during closing arguments: "Are you comfortable beyond a reasonable doubt that [appellant] shot a gun? No."
 {¶ 19} When the juvenile court issued its jury instructions, it instructed the jury on reckless homicide as lesser included offenses to the murder and felony-murder counts in regard to Kiera's death. The juvenile court noted, "Reckless homicide is defined as recklessly causing the death of another." The juvenile court also noted:
 A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.
 {¶ 20} Appellant's trial counsel requested no jury instructions on self-defense or defense of another. Appellant's trial counsel requested no jury instructions on the mental element of negligence as a comparative instruction to the mental element of recklessness and did not request a jury instruction on negligent homicide as a lesser included offense to murder and felony murder. In addition, the juvenile court did not provide any such instructions.
 {¶ 21} The jury did not adjudicate appellant delinquent for the felony-murder, murder, felonious-assault, and attempted-murder counts. However, the jury adjudicated the child to be a delinquent minor for having committed the offenses of reckless homicide as lesser included offenses to the felony-murder and murder counts. The jury found that appellant was 15 years old at the time of the incident. The jury also concluded that appellant had a firearm "on or about his person or under his control" and that appellant did "display, and/or brandish and/or indicate he possessed and/or used the firearm in the commission of the offense." Through those additional findings, the jury also adjudicated appellant delinquent on the accompanying firearm specifications and made appellant eligible for a blended adult/juvenile serious-youthful-offender sentence. R.C. 2152.11(A)(2), 2152.11(F)(2), and 2152.13.
 {¶ 22} On February 8, 2006, the juvenile court held a sentencing hearing. As noted above, the juvenile court had authority to impose an adult sentence on appellant because appellant was tried as a serious youthful offender. See R.C. *Page 806 2152.13. Because the jury found appellant delinquent for reckless homicide, a third-degree felony, the imposition of the adult sentence was discretionary and not mandatory. See R.C.2152.11(F).
 {¶ 23} At the sentencing hearing, appellant's trial counsel argued against the imposition of a blended juvenile/adult serious-youthful-offender sentence. Specifically, appellant's trial counsel argued that "imposing such a sentence would be in violation of [appellant's] Fifth Amendment right, articulated under" Blakely v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403. Appellant's trial counsel then argued that even if the juvenile court decided to impose a blended juvenile/adult serious-youthful-offender sentence, the juvenile court could not properly impose more than the minimum prison sentence on the adult portion. In particular, appellant's trial counsel argued that the record did not support a nonminimum prison sentence, and appellant's trial counsel also argued that "a maximum sentence, or even a non-minimum sentence would violate his right[s]."
 {¶ 24} The juvenile court then stated:
 I have the discretion to order a blended sentence on this reckless homicide because a firearm was used and the law requires me to use graduated actions and services to provide for the protection, care and mental and physical development of the child involved in this case. That is just part of the juvenile [serious-youthful-offender] statute. And I need to consider the circumstances and facts, the juvenile's history, the length of time level and juvenile history, and any adult sentence would be stayed or suspended pending any juvenile disposition.
 * * * [Appellant] didn't have any real problems before this incident. He had no school suspensions, no drug or alcohol abuse, no prior mental treatment, no psychosis, according to the psychologist. * * *
 * * *
 For the felony, I can sentence him to a minimum of one to five years on the felony. The underlying felony and the underlying gun specification, three years. So the total could be four to eight years. And then of course I have to jump the bridge of what [appellant's trial counsel] wants, which is not to impose the serious youthful offender portion of the sentence at all, because it's now discretionary based on what the verdict was after the jury trial.
 But one of the big factors is the seriousness of the offense. And * * * a firearm was used, and a little girl died. That is a big factor in the case.
 * * * [B]ecause of the seriousness of this incident, I find that * * * the disposition should be that a serious youthful offender blended sentence should occur. *Page 807 
 {¶ 25} In finding appellant a serious youthful offender, the juvenile court imposed an adult and juvenile sentence on appellant. As to the juvenile disposition, the juvenile court committed appellant to the legal custody of the Department of Youth Services for an indefinite term of six months and a maximum period not to exceed appellant's attainment of 21 years of age. As to the adult sentence for appellant's third-degree felony reckless homicide, the juvenile court imposed a single three-year prison sentence, which is above the one-year minimum prison sentence authorized for such felonies. See R.C. 2929.14(A). Likewise, the juvenile court imposed an additional single three-year prison sentence on the accompanying firearm specifications.
 {¶ 26} In imposing a nonminimum sentence for reckless homicide, the juvenile court made findings under R.C.2929.14(B) of Ohio's felony-sentencing guidelines. Specifically, the juvenile court stated:
 The adult portion then I need to look at the one to five years, and the seriousness of the offense, and why I could do the minimum or maximum. And based on the seriousness of the offense, that the shortest sentence to me would demean the seriousness of [appellant's] conduct. Court will sentence [appellant] to three years on the reckless homicide F-3.
The juvenile court then issued a judgment entry noting that it found appellant to be a delinquent minor child having committed the offense of reckless homicide with firearm specifications. The juvenile court also reiterated the above-noted blended juvenile/adult serious-youthful-offender sentence.
 {¶ 27} Appellant appeals, raising three assignments of error:
 Assignment of Error Number One The trial court committed plain error when it failed to properly instruct the jury on the law relevant to self-defense and the defense of others when the facts warranted such instructions. The trial court further erred when it failed to instruct on the definition of criminally negligent conduct so that the jury could properly compare and contrast the mental states of reckless and negligence. The defendant was also deprived of his constitutional right to a fair trial and the effective assistance of counsel when his attorney failed to request these instructions.
 Assignment of Error Two The trial court erred when it imposed an adult sentence upon the defendant by making predicate findings that were constitutionally improper for the court to make under State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. *Page 808 
 Assignment of Error Three The trial court erred when it imposed a sentence greater than the shortest prison term authorized for the adult offense in the absence of any facts, either admitted by the defendant or found by a jury, that would have allowed the trial court to depart from its obligation to impose the shortest prison term upon an offender who had never served a previous prison term pursuant to R.C. 2929.14(B).
 {¶ 28} In his first assignment of error, appellant contends that the juvenile court committed plain error by not providing a jury instruction on negligent homicide as a lesser included offense to murder and felony murder and, in general, by not providing a definition of the mental element of negligence as a comparative jury instruction with the mental element of recklessness. Appellant also claims that the juvenile court committed plain error by not providing jury instructions on self-defense and defense of another. Similarly, appellant contends that his trial counsel rendered ineffective assistance by not requesting those jury instructions. We disagree.
 {¶ 29} As appellant recognizes, appellant's trial counsel did not request those jury instructions, and thus appellant has waived all but plain error on that issue.State v. Coley (2001), 93 Ohio St.3d 253, 266,754 N.E.2d 1129. Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial." State v. Barnes (2002),94 Ohio St.3d 21, 27, 759 N.E.2d 1240. Under the plain-error standard:
 First, there must be an error, i.e., a deviation from a legal rule. * * * Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. * * * Third, the error must have affected "substantial rights." We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.
Id.
 {¶ 30} We first address appellant's claim that the juvenile court committed plain error by not giving a self-defense jury instruction. In order for a defendant to establish self-defense against danger of death or great bodily harm, he must prove by a preponderance of the evidence (1) that he was not at fault in creating the situation giving rise to the altercation, (2) that he had a bona fide belief that he was in immediate danger of bodily harm and that his only means of escape from the danger was the use of force, and (3) that he did not violate any *Page 809 
duty to retreat or to avoid the danger. State v.Jackson (1986), 22 Ohio St.3d 281, 284, 22 OBR 452,490 N.E.2d 893; State v. Griffin, Montgomery App. No. 20681, 2005-Ohio-3698, 2005 WL 1704917, at ¶ 18. In contrast, to establish self-defense against nondeadly force, the defendant must establish (1) that the defendant was not at fault in creating the situation giving rise to the altercation and (2) that he had reasonable grounds to believe and an honest belief, even though mistaken, that he was in imminent danger of bodily harm and his only means to protect himself from the danger was by the use of force not likely to cause death or great bodily harm. State v. Hansen, Athens App. No. 01CA15, 2002-Ohio-6135, 2002 WL 31518181, at ¶ 24; Griffin
at ¶ 18.
 {¶ 31} As indicated, self-defense includes a "subjective * * * consideration of whether the defendant had an honest belief that he was" in danger. State v. Robinson
(1999), 132 Ohio App.3d 830, 837, 726 N.E.2d 581. Here, appellant confessed that he shot the firearm because a group of men were harming Harris, and appellant "felt that the way to protect" Harris was to try to scare the group away by shooting the firearm. Thus, by his admission, appellant did not act in self-defense when discharging the firearm, and the juvenile court did not commit plain error when it failed to provide a self-defense jury instruction.
 {¶ 32} Furthermore, we conclude that the juvenile court did not commit plain error when it failed to provide an instruction on defense of another. Defense of another is a variation of self-defense. State v. Moss, Franklin App. No. 05AP-610, 2006-Ohio-1647, 2006 WL 832581, at ¶ 13. Under certain circumstances, a person may use appropriate force to defend another. Id. However, "one who intervenes to help a stranger stands in the shoes of the person whom he is aiding, and if the person aided is the one at fault, then the intervenor is not justified in his use of force * * *." State v.Wenger (1979), 58 Ohio St.2d 336, 340, 12 O.O.3d 309,390 N.E.2d 801; Moss at ¶ 13; see, also, Ellis v.State (1992), 64 Ohio St.3d 391, 394, 596 N.E.2d 428, citing Wenger, 58 Ohio St.2d at 339-340, 12 O.O.3d 309,390 N.E.2d 801 (recognizing that "one who uses force to intervene in a conflict on behalf of another may not invoke a privilege of self-defense if the person defended was the aggressor in the conflict" [emphasis omitted]). Moreover, inState v. Smith, Washington App. No. 02CA75, 2003-Ohio-1712, 2003 WL 1757526, at ¶ 11, the Fourth District Court of Appeals held that a person is not entitled to claim defense of another in regard to a physical altercation if the person being defended voluntarily entered the physical altercation.
 {¶ 33} Here, Harris voluntarily entered the December 27, 2004 physical altercation, and pursuant toSmith, appellant was not entitled to claim defense of another. Specifically, Harris testified that although he did not want to fight, he nonetheless left his house and told Smith "to come by [his] house in the middle of *Page 810 
the street if he wanted to fight." Additionally, in light of Harris coming out of his house and making that statement, we find it significant that Harris also had appellant come over to his house before the fight.
 {¶ 34} We also reject appellant's contention that the juvenile court committed plain error when it failed to provide a jury instruction on negligent homicide as a lesser included offense to murder and felony murder. We do so because negligent homicide is not a lesser included offense to murder or felony murder. See State v. Koss (1990),49 Ohio St.3d 213, 219, 551 N.E.2d 970; State v. Brundage, Hamilton App. No. C-030632, 2004-Ohio-6436, 2004 WL 2757605, at ¶ 8.
 {¶ 35} In addition, we reject appellant's contention that the juvenile court committed plain error by not providing a definition of the mental element of negligence as a comparative jury instruction with the mental element of recklessness, which, as noted above, is the mental state for reckless homicide, the crime for which the jury found appellant delinquent. Appellant asserts that that instruction would have allowed the jury to compare the definition of negligence against the definition of recklessness. Through this argument, appellant is essentially maintaining that the jury might have acquitted appellant had it determined that appellant acted negligently and not recklessly, given that appellant was not charged with any crimes containing the negligent mental element, i.e., negligent homicide.
 {¶ 36} We have previously recognized the benefits of providing, under certain circumstances, a jury instruction that compares definitions of mental elements, even though one of the mental elements does not pertain to the charges in the case. See Columbus v. Akins (Sept. 27, 1984), Franklin App. No. 83AP-977. However, Akins does not automatically require such instructions on comparative mental elements, and such comparative instructions may not be needed in cases when the given instructions are adequate. See State v.Courtright (Sept. 2, 1986), Franklin App. No. 86AP-34,1986 WL 9617; State v. Montgomery (Sept. 26, 2000), Franklin App. No. 99AP-1198, 2000 WL 1376431. Here, pursuant toCourtright and Montgomery, the juvenile court's jury instruction on recklessness tracked the statutory definition, and we conclude that the instruction adequately allowed the jury to consider the elements of reckless homicide. Accordingly, we determine that a comparative instruction on negligence was not warranted.
 {¶ 37} Next, we address appellant's claim that his trial counsel rendered ineffective assistance by not requesting the above-noted jury instructions. The United States Supreme Court established a two-pronged test for ineffective assistance of counsel. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. First, the defendant must show that counsel's performance *Page 811 
was outside the range of professionally competent assistance and, therefore, deficient. Id. at 687, 104 S.Ct. 2052,80 L.Ed.2d 674. Second, the defendant must show that counsel's deficient performance prejudiced the defense and deprived the defendant of a fair trial. Id. A defendant establishes prejudice if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694,104 S.Ct. 2052, 80 L.Ed.2d 674.
 {¶ 38} A properly licensed attorney is presumed competent. State v. Samatar, 152 Ohio App.3d 311,2003-Ohio-1639, 787 N.E.2d 691, at ¶ 88, citing Vaughnv. Maxwell (1965), 2 Ohio St.2d 299, 301, 31 O.O.2d 567,209 N.E.2d 164. Moreover, there is "`a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" State v. Bradley (1989),42 Ohio St.3d 136, 142, 538 N.E.2d 373, quotingStrickland, 466 U.S. at 689, 104 S.Ct. 2052,80 L.Ed.2d 674. In matters regarding trial strategy, we will generally defer to defense counsel's judgment. State v.Carter (1995), 72 Ohio St.3d 545, 558, 651 N.E.2d 965; see, also, State v. Carpenter (1996), 116 Ohio App.3d 615,626, 688 N.E.2d 1090, citing Bradley,42 Ohio St.3d at 144, 538 N.E.2d 373 (holding that we are to "presume that a broad range of choices, perhaps even disastrous ones, are made on the basis of tactical decisions and do not constitute ineffective assistance"). We will reverse on grounds of trial strategy only if defense counsel's trial strategy deviated from the standard of reasonableness. State v. Burgins
(1988), 44 Ohio App.3d 158, 160, 542 N.E.2d 707; State v.Newsome, Ashtabula App. No. 2003-A-0076, 2005-Ohio-3775,2005 WL 1714177, at ¶ 8.
 {¶ 39} Here, we conclude that appellant's trial counsel's failure to request the above-noted jury instructions did not constitute ineffective assistance. SeeStrickland, 466 U.S. at 687, 694, 104 S.Ct. 2052,80 L.Ed.2d 674. First, we find that reasonable trial strategy supports appellant's trial counsel's decision not to request a jury instruction on self-defense or defense of another. Appellant's trial counsel argued that the evidence failed to establish that appellant shot the firearm that caused Kiera's death. As noted above, self-defense, and concomitantly the related defense of another, serve as a "`justification for admitted conduct.'" Columbus v. Peoples, Franklin App. No. 05AP-247, 2006-Ohio-1718, 2006 WL 856233, at ¶ 46. These defenses represent more than a "`denial or contradiction of evidence which the prosecution has offered as proof of an essential element of the crime charged.'" Id., quoting Statev. Poole (1973), 33 Ohio St.2d 18, 19, 62 O.O.2d 340,294 N.E.2d 888. Rather, self-defense and defense of another "[admit] the facts claimed by the prosecution and then rel[y] on independent facts or circumstances which the defendant claims exempt him *Page 812 
from liability." (Emphasis omitted.) Peoples at ¶ 46. Thus, it would have been "`logically and legally inconsistent'" for appellant's trial counsel to assert for appellant both self-defense and defense of another while also arguing that appellant did not shoot the firearm that caused Kiera's death. Id. at ¶ 48, quoting State v. Powell (Sept. 29, 1997), Ross App. No. 96CA2257, 1997 WL 602864. Similarly, we recognize the above-noted record support for appellant's trial counsel's defense, and therefore, we have no cause to second-guess appellant's trial counsel's strategy to forgo arguments on self-defense and defense of another and instead argue that the evidence failed to establish that appellant shot the firearm that caused Kiera's death. See Carter,72 Ohio St.3d at 558, 651 N.E.2d 965; Carpenter, 116 Ohio App.3d at 626,688 N.E.2d 1090, citing Bradley, 42 Ohio St.3d at 144,538 N.E.2d 373.
 {¶ 40} Moreover, it would have been futile for appellant's trial counsel to request a jury instruction on negligent homicide as a lesser included offense to murder or felony murder, given that, as stated above, negligent homicide is not a lesser included offense to those crimes. SeeKoss, 49 Ohio St.3d at 219, 551 N.E.2d 970;Brundage, 2004-Ohio-6436 at ¶ 8. Thus, appellant's trial counsel was not ineffective for failing to make such a futile request. See State v. Jones (June 13, 2000), Franklin App. No. 99AP-704, 2000 WL 756843. Similarly, we find that appellant's trial counsel was not ineffective for failing to request a jury instruction on the mental element of negligence as a comparative instruction to the mental element of recklessness, given our above conclusion that that instruction was not warranted. See Jones.
 {¶ 41} Again, we conclude that the juvenile court did not commit plain error by not providing these jury instructions, and we conclude that appellant's trial counsel did not render ineffective assistance by failing to request the jury instructions. Therefore, we overrule appellant's first assignment of error.
 {¶ 42} We next address appellant's second assignment of error, which concerns his blended juvenile/adult sentence for reckless homicide with a firearm specification. As noted above, upon finding appellant delinquent on reckless homicide, the jury also found that appellant was 15 years old at the time of the incident, that appellant had a firearm "on or about his person or under his control," and that appellant did "display, and/or brandish and/or indicate he possessed and/or used the firearm in the commission of the offense." Through these additional findings, the jury made appellant eligible for a serious-youthful-offender sentence. R.C. 2152.11(A)(2),2152.11(F)(2), and 2152.13. A serious youthful offender is subject to a sentence prescribed under both juvenile and adult sentencing guidelines. R.C. 2152.11 and 2152.13. Due to appellant's delinquency adjudication for reckless homicide, a third-degree felony, the imposition of the adult sentence was discretionary, not mandatory. R.C. 2152.11(F). R.C.2152.13(D)(2)(a) governs a *Page 813 
juvenile court's discretion to impose a blended juvenile/adult sentence on a serious youthful offender and states:
 If a child is adjudicated a delinquent child for committing an act under circumstances that allow, but do not require, the juvenile court to impose on the child a serious youthful offender dispositional sentence under section 2152.11 of the Revised Code, all of the following apply:
 (i) If the juvenile court on the record makes a finding that, given the nature and circumstances of the violation and the history of the child, the length of time, level of security, and types of programming and resources available in the juvenile system alone are not adequate to provide the juvenile court with a reasonable expectation that the purposes set forth in section 2152.01 of the Revised Code will be met, the juvenile court may impose upon the child a sentence available for the violation, as if the child were an adult, under Chapter 2929. of the Revised Code, except that the juvenile court shall not impose on the child a sentence of death or life imprisonment without parole.
 (ii) If a sentence is imposed under division (D)(2)(a)(i) of this section, the juvenile court also shall impose upon the child one or more traditional juvenile dispositions under sections 2152.16, 2152.19, and 2152.20 and, if applicable, section 2152.17 of the Revised Code.
Further, under R.C. 2152.13(D)(2)(a)(iii):
 (iii) The juvenile court shall stay the adult portion of the serious youthful offender dispositional sentence pending the successful completion of the traditional juvenile dispositions imposed.
 {¶ 43} R.C. 2152.01, referred to in R.C.2152.13(D)(2)(a), establishes the purposes for juvenile dispositions and states:
 (A) The overriding purposes for dispositions under this chapter are to provide for the care, protection, and mental and physical development of children subject to this chapter, protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender.
 {¶ 44} Thus, R.C. 2152.13(D)(2)(a) sets out a two-tiered approach once a minor is adjudicated delinquent under circumstances that allow, but do not require, a blended juvenile/adult serious-youthful-offender sentence: (1) the court must make findings that the juvenile sentence is not adequate to meet the purposes in R.C. 2152.01, and (2) if the court makes those findings, then the court may impose an adult sentence.
 {¶ 45} After exercising its discretion to impose a blended juvenile/adult sentence on a serious youthful offender, "[t]he juvenile court shall stay the adult portion of the serious youthful offender dispositional sentence pending the *Page 814 
successful completion of the traditional juvenile dispositions imposed." R.C. 2152.13(D)(2)(a)(iii). However, under R.C.2152.14(E), the juvenile court may later invoke the adult portion of a serious-youthful-offender sentence on a juvenile if, after a hearing, the juvenile court finds on record by clear and convincing evidence that (1) the juvenile is serving the juvenile portion of a serious-youthful-offender dispositional sentence and (2) the juvenile is at least 14 years of age and has been admitted to a department of youth services facility, or criminal charges are pending against the juvenile. Additionally, to invoke the adult sentence under R.C. 2152.14(E), the juvenile court must find on record by clear and convincing evidence either of the following: (1) the juvenile, after reaching 14 years of age and while in custody of a facility of the Department of Youth Services, violated rules of the facility by committing any felony or a first-degree misdemeanor offense of violence; (2) the juvenile, after reaching 14 years of age and while in custody of a facility of the Department of Youth Services, engaged in conduct that created a substantial risk to the safety or security of the facility, the community, or the victim; (3) the juvenile, while on community control or parole, violated a condition of the community control or parole by committing any felony or a first-degree misdemeanor offense of violence; or (4) the juvenile, while on community control or parole, engaged in conduct that created a substantial risk to the safety or security of the community or of the victim. Lastly, to invoke the adult sentence under R.C. 2152.14(E), in addition to the above factors, the juvenile court must find that the juvenile's conduct demonstrates that he or she is unlikely to be rehabilitated during the remaining period of juvenile jurisdiction. The juvenile court "may modify the adult sentence the court invokes to consist of any lesser prison term that could be imposed for the offense and, in addition to the prison term or in lieu of the prison term if the prison term was not mandatory, any community control sanction that the [juvenile] was eligible to receive at sentencing." R.C. 2152.14(E)(2).
 {¶ 46} Here, in challenging the juvenile court's decision to impose the blended juvenile/adult sentence, appellant first contends that the juvenile court failed to specify on the record all of the requisite findings under R.C.2152.13(D)(2)(a)(i), i.e.:
 [G]iven the nature and circumstances of the violation and the history of the child, the length of time, level of security, and types of programming and resources available in the juvenile system alone are not adequate to provide the juvenile court with a reasonable expectation that the purposes set forth in section 2152.01 of the Revised Code will be met * * *.
According to appellant, the juvenile court found that appellant committed a serious offense, that appellant used a firearm, and that someone died from appellant's actions. Nonetheless, appellant argues, the juvenile court did not *Page 815 
find, pursuant to R.C. 2152.13(D)(2)(a)(i), that "the length of time, level of security, and types of programming and resources available in the juvenile system alone are not adequate to provide the juvenile court with a reasonable expectation that the purposes set forth in section 2152.01 of the Revised Code will be met."
 {¶ 47} However, in finding that a blended juvenile/adult sentence was warranted, the juvenile court mentioned at the sentencing hearing its responsibility to impose a sentence that will "provide for the protection, care and mental and physical development" of appellant, which are dispositional purposes under R.C. 2152.01 and, thus, factors for consideration under R.C. 2152.13(D)(2)(a). The juvenile court also mentioned its consideration of other factors under R.C.2152.13(D)(2)(a), i.e., in the court's words, "the length of time[,] level and juvenile history," and, as appellant acknowledges, the juvenile court recognized the seriousness of appellant's offense. Therefore, we conclude that the juvenile court referred to the requisite factors to impose a blended juvenile/adult sentence pursuant to R.C. 2152.13(D)(2)(a).
 {¶ 48} Alternatively, appellant asserts that the juvenile court imposed the blended juvenile/adult sentence after making findings under R.C. 2152.13(D)(2)(a) in violation of constitutional jury-trial principles and in contravention ofBlakely and State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, 845 N.E.2d 470.
 {¶ 49} The Sixth Amendment to the United States Constitution states: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury * * *." Under the Fourteenth Amendment, theSixth Amendment is applicable to the states. Duncan v.Louisiana (1968), 391 U.S. 145, 148, 88 S.Ct. 1444,20 L.Ed.2d 491.
 {¶ 50} "It was not anticipated that jury rights may be implicated in sentencing until Apprendi v. NewJersey [2000], 530 U.S. 466[, 120 S.Ct. 2348,147 L.Ed.2d 435]." Foster, 109 Ohio St.3d 1, 2006-Ohio-856,845 N.E.2d 470, at ¶ 3. In Apprendi, the United States Supreme Court examined New Jersey's hate-crime statute, which allowed an enhanced sentence if the judge found by a preponderance of the evidence that racial bias was a motive for the offense. 530 U.S. at 468-469, 120 S.Ct. 2348,147 L.Ed.2d 435. The trial court imposed an enhanced sentence for a defendant's conviction of a second-degree felony, unlawful possession of a bomb. Id. at 468-471, 120 S.Ct. 2348,147 L.Ed.2d 435. In imposing the enhanced sentence, the trial court found by a preponderance of the evidence that the defendant had a racial bias in committing the offense. Id. at 471,120 S.Ct. 2348, 147 L.Ed.2d 435. The enhanced sentence exceeded the ten-year maximum sentence allotted for nonenhanced second-degree felonies. Id. at 468-469, 471, 120 S.Ct. 2348, 147 L.Ed.2d 435. The United States Supreme Court concluded that the defendant's sentence violated Sixth Amendment jury-trial principles and *Page 816 
stated that in accordance with the Sixth Amendment, the jury, rather than a judge, must find all facts essential to punishment. Id. at 490, 497, 120 S.Ct. 2348, 147 L.Ed.2d 435.
 {¶ 51} Specifically, the United States Supreme Court stated:
 The question whether [the defendant] had a constitutional right to have a jury find * * * bias on the basis of proof beyond a reasonable doubt is starkly presented.
 Our answer to that question was foreshadowed by our opinion in Jones v. United States, 526 U.S. 227[, 119 S.Ct. 1215, 143 L.Ed.2d 311] (1999), construing a federal statute. We there noted that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." Id. at 243 [119 S.Ct. 1215, 143 L.Ed.2d 311], n. 6. The Fourteenth Amendment commands the same answer in this case involving a state statute.
Apprendi, 530 U.S. at 475-476, 120 S.Ct. 2348,147 L.Ed.2d 435.
 {¶ 52} The United States Supreme Court then ultimately concluded:
 In sum, our reexamination of our cases in this area, and of the history upon which they rely, confirms the opinion that we expressed in Jones. Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.
Id. at 490, 120 S.Ct. 2348, 147 L.Ed.2d 435.
 {¶ 53} "In Blakely * * *, theApprendi rule was broadened." Foster,109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, at ¶ 5. InBlakely, a defendant pleaded guilty in Washington state court to second-degree kidnapping involving domestic violence and use of a firearm, a felony carrying a ten-year maximum prison penalty. Blakely, 542 U.S. at 298-299,124 S.Ct. 2531, 159 L.Ed.2d 403. However, other sentencing provisions specified a standard range of 49 to 53 months for second-degree felony kidnapping with a firearm. Id. at 299,124 S.Ct. 2531, 159 L.Ed.2d 403. Yet a judge may impose a sentence above the standard range upon finding "`substantial and compelling reasons justifying an exceptional sentence.'" Id., quoting Wash.Rev. Code Ann. 9.94A.120(2).
 {¶ 54} In Blakely, the trial court imposed a prison term of 90 months, after making a finding that the defendant acted with "`deliberate cruelty,'" one of the statutorily enumerated grounds that justified an exceptional sentence. 542 U.S. at 300, 124 S.Ct. 2531, 159 L.Ed.2d 403, quoting Wash.Rev. Code Ann. 9.94A.390(2)(h)(iii). The United States Supreme Court held that the defendant's *Page 817 
sentence violated his Sixth Amendment right to a jury trial because a jury did not find the facts that permitted the enhanced sentence. Id. at 304-305, 124 S.Ct. 2531,159 L.Ed.2d 403. Although the prosecution argued that the trial court had not violated Apprendi because the statutory maximum was ten years, the United States Supreme Court held that "the `statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis ofthe facts reflected in the jury verdict or admitted by thedefendant. * * * In other words, the relevant `statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may imposewithout any additional findings." (Emphasis sic.)Blakely, 542 U.S. at 303-304, 124 S.Ct. 2531,159 L.Ed.2d 403. In so concluding, the court made no exception for whether the "determined facts require a sentence enhancement or merely allow it." (Emphasis sic.) Id. at 305, fn. 8, 124 S.Ct. 2531, 159 L.Ed.2d 403.
 {¶ 55} Since appellant's sentencing, the Ohio Supreme Court decided the applicability of Blakely to Ohio's felony-sentencing laws in Foster. InFoster, the Ohio Supreme Court concluded that portions of Ohio's felony-sentencing statutes violate the Sixth Amendment to the United States Constitution in the manner set forth inBlakely. Foster, 109 Ohio St.3d 1, 2006-Ohio-856,845 N.E.2d 470, at ¶ 50-83. Specifically, the court stated that under certain circumstances, the felony-sentencing statutes require a trial court to make "specific findings before imposing a sentence beyond that presumed solely by a jury verdict or admission of a defendant." Id. at ¶ 54. Accordingly, inFoster, the Ohio Supreme Court severed the unconstitutional statutes from Ohio's felony-sentencing laws. Id. at ¶ 99. The Ohio Supreme Court then concluded that cases pending on direct review "must be remanded to trial courts for new sentencing hearings." Id. at ¶ 104.
 {¶ 56} In State v. Draughon, Franklin App. No. 05AP-860, 2006-Ohio-2445, 2006 WL 1351607, at ¶ 7, we acknowledged the "broad language the Supreme Court of Ohio used in Foster when it ordered resentencing for all cases pending on direct review." However, we concluded that "a defendant who did not assert a Blakely challenge in the trial court waives that challenge and is not entitled to a resentencing hearing based on Foster." Id. In so concluding, we "consider[ed] the language used in UnitedStates v. Booker (2005), 543 U.S. 220, 125 S.Ct. 738[,160 L.Ed.2d 621], the case that Foster relied on in arriving at" its decision to sever the unconstitutional statutes from Ohio's felony-sentencing laws. Draughon at ¶ 7. "In Booker, the United States Supreme Court appliedBlakely to the Federal Sentencing Guidelines. The Booker Court applied its holding to all cases on direct review."Draughon at ¶ 7. However, the Booker court "expected reviewing courts to apply `ordinary prudential doctrines,' such as waiver * * *, to determine whether to remand a case for a new sentencing." Draughon at ¶ 7, *Page 818 
quoting Booker, 543 U.S. at 268, 125 S.Ct. 738,160 L.Ed.2d 621. "Thus, in accordance with the well-settled doctrine of waiver of constitutional challenges, and the language inBooker, we [held] that a Blakely challenge is waived by a defendant sentenced after Blakely if it was not raised in the trial court." Draughon at ¶ 8.
 {¶ 57} Here, appellee contends that appellant waived the argument that the Sixth Amendment jury trial right enunciated in Blakely and Foster precluded the juvenile court from making findings under R.C. 2152.13(D)(2)(a). Appellee notes that appellant's trial counsel instead argued to the juvenile court that appellant's Fifth Amendment rights "articulated under" Blakely precluded the juvenile court from making R.C. 2152.13(D)(2)(a) findings.
 {¶ 58} A party waives error on appeal when the party "could have called, but did not call, to the trial court's attention" error that "could have been avoided or corrected by the trial court." State v. Williams (1977),51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, paragraph one of the syllabus, modified on other grounds, State v. Gillard
(1988), 40 Ohio St.3d 226, 533 N.E.2d 272. Here, although appellant's trial counsel referred to appellant'sFifth Amendment rights when arguing against the juvenile court making R.C. 2152.13(D)(2)(a) findings, appellant's trial counsel also essentially advised the juvenile court to adhere toBlakely, a case grounded in Sixth Amendment jury-trial principles. In this regard, under Williams, we cannot say that appellant's trial counsel waived the argument that appellant brings on appeal, i.e., that Blakely, a case grounded in Sixth Amendment jury-trial principles, precluded the juvenile court from making R.C. 2152.13(D)(2)(a) findings. We therefore examine appellant's claim whether the juvenile court imposed the blended juvenile/adult sentence after making findings under R.C. 2152.13(D)(2)(a) in violation of jury-trial principles of the Sixth Amendment and in contravention ofBlakely and, as recognized after appellant's sentencing, Foster.
 {¶ 59} Under Ohio law, a juvenile subject to a serious-youthful-offender blended juvenile/adult sentence is entitled to a jury trial in juvenile court. See R.C.2152.13(C)(1). However, in McKeiver v. Pennsylvania
(1970), 403 U.S. 528, 545, 91 S.Ct. 1976, 29 L.Ed.2d 647, the United States Supreme Court held in a plurality opinion that "trial by jury in the juvenile court's adjudicative stage is not a constitutional requirement" under the Sixth Amendment. In doing so, while acknowledging the disappointments within the juvenile court system, the United States Supreme Court recognized that the juvenile system was established "`[i]n theory'" to "`be helpful and rehabilitative rather than punitive.'" Id. at 544, 91 S.Ct. 1976, 29 L.Ed.2d 647, fn. 5, quoting President's Commission on Law Enforcement and Administration of Justice, Task Force Report: Juvenile Delinquency *Page 819 
and Youth Crime (1967), 7-9 ("Task Force Report"). The United States Supreme Court also recognized that, "`[i]n theory the [juvenile] court's operations could justifiably be informal, its findings and decisions made without observing ordinary procedural safeguards, because it would act only in the best interest of the child.'" McKeiver, 403 U.S. at 544,91 S.Ct. 1976, 29 L.Ed.2d 647, quoting Task Force Report at 9. Likewise, the court recognized that "`[w]at should distinguish the juvenile from criminal courts is greater emphasis on rehabilitation, not exclusive preoccupation with it.'" Id. at 546, 91 S.Ct. 1976, 29 L.Ed.2d 647, fn. 6, quoting Task Force Report at 9. In examining the nature of the juvenile court system, the United States Supreme Court concluded that "[t]here is a possibility, at least, that the jury trial, if required as a matter of constitutional precept, will remake the juvenile proceeding into a fully adversary process and will put an effective end to what has been the idealistic prospect of an intimate, informal protective proceeding." McKeiver,403 U.S. at 545, 91 S.Ct. 1976, 29 L.Ed.2d 647. Similarly, the court concluded that "[i]f the jury trial were to be injected into the juvenile court system as a matter of right, it would bring with it into that system the traditional delay, the formality, and the clamor of the adversary system * * *." Id. at 550, 91 S.Ct. 1976, 29 L.Ed.2d 647. Lastly, the court did recognize that "[i]f, in its wisdom, any State feels the jury trial is desirable in all cases, or in certain kinds, there appears to be no impediment to its installing a system embracing that feature. That, however, is the State's privilege and not its obligation." Id. at 547, 91 S.Ct. 1976, 29 L.Ed.2d 647; see, also, In re Anderson (2001), 92 Ohio St.3d 63, 66,748 N.E.2d 67 (recognizing that McKeiver declined to mandate jury-trial rights in juvenile proceedings); see, also,In re Cundiff (Jan. 13, 2000), Franklin App. No. 99AP-364, 2000 WL 28845 (reiterating that McKeiver held that "`trial by jury in the juvenile court's adjudicative stage is not a constitutional requirement'").
 {¶ 60} In United States ex rel. Murray v.Owens (C.A.2, 1972), 465 F.2d 289, 292, the United States Court of Appeals for the Second Circuit analyzedMcKeiver and stated that "the conclusion is inescapable that the Supreme Court in no way implied that jury trials were constitutionally required if the ultimate disposition following an adjudication of delinquency was the same as for older offenders.'" The court also stated that the United States Supreme Court's rationale for not providing a Sixth Amendment right to a jury trial in juvenile proceedings "is not altered by whether the juvenile[,] once adjudged a delinquent, is committed to a juvenile or an adult facility." Id.
 {¶ 61} Thus, in accordance with Owens, whether the Sixth Amendment jury trial right as applied inBlakely applies to R.C. 2152.13(D)(2)(a) findings is not determined by the serious youthful offender's potential adult sentence. Similarly, as McKeiver suggests, the provision in R.C. 2152.13(C)(1) that grants a right to a *Page 820 
jury trial in a serious-youthful-offender case is, itself, irrelevant to whether the Sixth Amendment as applied inBlakely imposes a right to a jury trial for R.C.2152.13(D)(2)(a) findings. See McKeiver,403 U.S. at 547, 91 S.Ct. 1976, 29 L.Ed.2d 647.
 {¶ 62} Rather, a juvenile tried as a serious youthful offender is under the jurisdiction of the juvenile court, which, in contrast to criminal courts, according toMcKeiver, places a greater emphasis on rehabilitation than punishment. See McKeiver, 403 U.S. at 546,91 S.Ct. 1976, 29 L.Ed.2d 647, fn. 6. The serious-youthful-offender statutes do not obviate the juvenile court's focus on rehabilitation rather than punishment. As an example, before actually requiring a juvenile to serve the adult sentence, after previously pronouncing the sentence at the sentencing hearing, the juvenile court must determine that the juvenile is unlikely to be rehabilitated during the remaining period of juvenile jurisdiction. R.C. 2152.14(E). Likewise, R.C. 2152.01
emphasizes that the "overriding purposes" for juvenile court dispositions include "to provide for the care, protection, and mental and physical development of children" and to "rehabilitate the offender," and under R.C. 2152.13(D)(2)(a), the juvenile court must consider those "overriding purposes" when initially deciding at the sentencing hearing whether to impose a blended juvenile/adult sentence on a serious youthful offender. To be sure, R.C. 2152.01 also notes that the "overriding purposes" for juvenile dispositions include to "protect the public interest and safety, hold the offender accountable for the offender's actions [and] restore the victim." However, these other factors merely confirmMcKeiver's recognition of the juvenile court's " `emphasis on rehabilitation'" but "`not exclusive preoccupation with it.'" See McKeiver, 403 U.S. at 546,91 S.Ct. 1976, 29 L.Ed.2d 647, fn. 6, quoting Task Force Report at 9. Accordingly, given that appellant was tried in juvenile court, which, in contrast to the criminal court system, emphasizes rehabilitation over punishment, and given that the serious-youthful-offender statutes, including R.C.2152.13(D)(2)(a), do not obviate the distinct rehabilitative aspects of the juvenile court system, we conclude that, pursuant to McKeiver, the Sixth Amendment as applied inBlakely, a case grounded in Sixth Amendment principles, does not confer a right to a jury trial for R.C.2152.13(D)(2)(a) findings.
 {¶ 63} In so concluding, we emphasize thatBlakely "showed no intention * * * to overrule [the United States Supreme Court's] well-established holding that the [Sixth Amendment] right to a jury does not attach to the traditional juvenile justice system." State v. Meade
(Wash.App. 2005), 129 Wash.App. 918, 925-926, 120 P.3d 975, citing McKeiver. "Blakely did not alter long-standing rules regarding when the right to a jury attaches; it merely broadened and delineated the scope of that right once it does attach." Id. at 926, 120 P.3d 975. *Page 821 
 {¶ 64} Next, we acknowledge that Foster
applied Blakely to invoke Sixth Amendment jury-trial rights for Ohio's adult felony-sentencing guidelines. SeeFoster, 109 Ohio St.3d 1, 2006-Ohio-856,845 N.E.2d 470, at ¶ 50-83. For the reasons noted above, we also conclude that Foster's application of theSixth Amendment jury-trial rights to Ohio's adult felony-sentencing guidelines has no bearing on the juvenile court's authority to make findings under R.C. 2152.13(D)(2)(a) when deciding whether to impose a blended juvenile/adult sentence on a serious youthful offender.
 {¶ 65} For the purposes of complete and logical analysis extending from the above Sixth Amendment jury-trial considerations, we next address the applicability of Section 5, Article I of the Ohio Constitution, which states that the "right of trial by jury shall be inviolate," and Section 10, Article I
of the Ohio Constitution, which provides for the right to "speedy public trial by an impartial jury." These sections preserve for an accused "`all essential and distinguishing features of the trial by jury' known to the common law in Ohio."Foster, 109 Ohio St.3d 1, 2006-Ohio-856,845 N.E.2d 470, at ¶ 2, quoting Work v. State (1853),2 Ohio St. 296, syllabus. Foster, which was issued after appellant's sentencing, cited these Ohio constitutional jury-trial rights in its decision on the applicability of constitutional jury-trial rights to Ohio's adult felony-sentencing statutes. Id. at ¶ 2; see, also, Statev. Brooks, Mahoning App. No. 05MA31, 2006-Ohio-4610,2006 WL 2573173, at ¶ 44 (noting that "the Foster
decision was also based upon Ohio constitutional law dealing with the jury trial right").
 {¶ 66} The Ohio Supreme Court has previously held that the Ohio Constitution does not provide the right to a jury trial in juvenile-delinquency proceedings. In re Agler
(1969), 19 Ohio St.2d 70, 77-78, 48 O.O.2d 85, 249 N.E.2d 808. In Agler, the Ohio Supreme Court noted that at the time, juveniles adjudicated delinquent in juvenile court were detained in facilities separate from adult facilities. Id. at 73, 48 O.O.2d 85, 249 N.E.2d 808. While the serious-youthful-offender statutes no longer make that distinction, Agler declined to extend Ohio constitutional jury-trial rights to juvenile-delinquency proceedings upon recognizing that juvenile proceedings are "noncriminal" and upon recognizing the "individualized, remedial nature" of juvenile court adjudications. Id. at 78-79,249 N.E.2d 808. As noted above, the serious-youthful-offender statutes do not obviate the rehabilitation-focused aspects of the juvenile court system. Accordingly, pursuant toAgler, we conclude that Foster's application of Sections 5 and 10, Article I of the Ohio Constitution to the adult felony-sentencing statutes has no bearing on the juvenile court's authority to make findings under R.C. 2152.13(D)(2)(a) when deciding whether to impose a blended juvenile/adult sentence on a serious youthful offender. *Page 822 
 {¶ 67} Therefore, based on the above, we conclude that the juvenile court did not make the R.C. 2152.13(D)(2)(a) findings in violation of appellant's constitutional jury-trial rights articulated under the Sixth Amendment to the United States Constitution and Sections 5 and 10, Article I of the Ohio Constitution, or in contravention of Blakely andFoster. In so concluding, we note that appellant does not raise the implications of the statutory jury-trial right that R.C. 2152.13(C)(1) confers in serious-youthful-offender cases. Thus, we do not analyze whether R.C. 2152.13(C)(1) implicates the juvenile court's authority to make the R.C.2152.13(D)(2)(a) findings. Rather, based on the issues that appellant has presented, our decision here is based solely on an analysis of R.C. 2152.13(D)(2)(a) findings and a conclusion that those findings are not implicated by jury-trial rights established in the Sixth Amendment to the United States Constitution and Sections 5 and 10, Article I of the Ohio Constitution, as well as the application of those jury-trial rights in Blakely and Foster.
 {¶ 68} Accordingly, having rejected appellant's alternative arguments above, we determine that the juvenile court did not err when it imposed a blended juvenile/adult sentence on appellant upon making R.C. 2152.13(D)(2)(a) findings. Therefore, we overrule appellant's second assignment of error.
 {¶ 69} Appellant's third assignment of error concerns the adult portion of the blended juvenile/adult sentence for his third-degree-felony delinquency adjudication of reckless homicide. As noted above, R.C. 2152.13(D)(2)(a) governs the juvenile court's discretion to impose an adult sentence on a serious youthful offender and states:
 (i) If the juvenile court on the record makes a finding that, given the nature and circumstances of the violation and the history of the child, the length of time, level of security, and types of programming and resources available in the juvenile system alone are not adequate to provide the juvenile court with a reasonable expectation that the purposes set forth in section 2152.01 of the Revised Code will be met, the juvenile court may impose upon the child a sentence available for the violation, as if the child were an adult, under Chapter 2929. of the Revised Code, except that the juvenile court shall not impose on the child a sentence of death or life imprisonment without parole.
 {¶ 70} Here, the juvenile court imposed a single three-year prison sentence for appellant's third-degree-felony reckless homicide, which is a sentence above the one-year minimum prison sentence authorized for adult sentences for third-degree felonies. See R.C. 2929.14(A). In imposing the nonminimum sentence for the reckless homicide, the juvenile court made findings under R.C. 2929.14(B) of Ohio's adult felony-sentencing statutes. Appellant argues that the juvenile court imposed the a sentence in violation of jury-trial principles established by the Sixth Amendment and in contravention of Blakely and Foster. InFoster, the *Page 823 
Ohio Supreme Court applied Blakely and concluded that R.C. 2929.14(B) violated Ohio and federal constitutional jury-trial principles. Foster, 109 Ohio St.3d 1,2006-Ohio-856, 845 N.E.2d 470, at ¶ 61. The Ohio Supreme Court then severed R.C. 2929.14(B) from the adult felony-sentencing statutes. Id. at ¶ 99.
 {¶ 71} Appellant's third assignment of error poses a question that applies to the adult part of serious-youthful-offender sentences, like appellant's, imposed before Foster severed unconstitutional portions of Ohio's adult felony-sentencing statutes in R.C. Chapter 2929. Therefore, we address only adult sentences on serious-youthful-offender sentences imposed beforeFoster.
 {¶ 72} Here, the adult felony-sentencing statutes did not directly authorize the juvenile court to impose the adult sentence on appellant. Rather, as noted above, the authority stemmed from R.C. 2152.13(D)(2)(a) of the serious-youthful-offender statutes, which referred the juvenile court to the adult felony-sentencing statutes. Ultimately, the juvenile court still imposed the blended juvenile/adult serious-youthful-offender sentence under the dictates of R.C.2152.13(D)(2)(a) and, overall, the serious-youthful-offender provisions, which, as noted above, do not obviate the juvenile court's focus on rehabilitation rather than punishment. Thus, although the juvenile court was imposing an adult sentence on appellant, it was doing so under the rehabilitative confines of the juvenile system and the serious-youthful-offender statutes. As further demonstration of this rehabilitative focus, we reiterate that before the juvenile court would actually make appellant serve the adult portion of the sentence, the juvenile court would have to determine, pursuant to R.C. 2152.14(E) of the serious-youthful-offender statutes, that appellant is unlikely to be rehabilitated during the remaining period of juvenile jurisdiction.
 {¶ 73} Thus, it necessarily follows from our above analysis in appellant's second assignment of error thatBlakely, Foster, the Sixth Amendment to the United States Constitution, and Sections 5 and 10, Article I of the Ohio Constitution did not confer jury-trial rights on the R.C.2929.14(B) findings that the juvenile court made when it imposed the adult portion of the serious-youthful-offender sentence. We therefore conclude that the juvenile court did not make the R.C.2929.14(B) findings in violation of constitutional jury-trial rights articulated under the Sixth Amendment to the United States Constitution and Sections 5 and 10, Article I of the Ohio Constitution, or in contravention of Blakely andFoster. In so concluding, we reiterate that based on the issues appellant presented, we do not analyze whether R.C.2152.13(C)(1) implicated the juvenile court's R.C. 2929.14(B) findings. Accordingly, based on the above, we overrule appellant's third assignment of error. *Page 824 
 {¶ 74} In summary, we overrule appellant's first, second, and third assignments of error. Consequently, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.
Judgment affirmed.
BROWN and SADLER, JJ., concur.