[Cite as *State v. Kelly*, 2021-Ohio-325.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2020-CA-8 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-723 |
| | : | |
| TOMMY KELLY, II | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 5th day of February, 2021.

. . . . . . . . . . .

JOHN M. LINTZ, Atty. Reg. No. 0097715, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellee

JOHN RUTAN, Atty. Reg. No. 0087019, 336 South High Street, Columbus, Ohio 43215
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Defendant-appellant Tommy Kelly, II appeals from his convictions for felonious assault and aggravated robbery. For the reasons that follow, the trial court's judgment will be affirmed.

## I.  Facts and Procedural History

{¶ 2} On October 26, 2019, Springfield Police Department Officers Zachary Chenoweth and his partner Brett Adams were on routine patrol when they responded to a 9:39 p.m. dispatch regarding a male with gunshot wounds driving near the intersection of Murray Street and Chestnut Avenue. When they arrived at the intersection, the officers observed a vehicle matching the description given in the dispatch. A man, later identified as Cody Bunch, got out of the vehicle and began to walk toward the officers. Bunch had blood on his jeans and was unsteady on his feet. The officers told Bunch to sit down. They then cut off his jeans and observed gunshot wounds to his legs. Bunch told the officers he had been at a gas station when an armed man robbed him. Springfield Officer David Krauss arrived on the scene and took photographs of Bunch's vehicle and his injuries.

{¶ 3} Bunch was transported by ambulance to a local hospital; his vehicle was towed and impounded as evidence. Officer Krauss followed the ambulance to the hospital, where he interviewed Bunch. According to Bunch's statements to Krauss, Bunch had "just got paid and had a lot of cash in his wallet" when he was robbed. Tr. p. 132. Bunch was at a gas station when a "black male about 5'9" came to the passenger side door, opened it, and pointed a gun at him, and told him to give him all of his money * * *." *Id.* Bunch did not immediately comply, and the gunman stated, "Give me all your

f*****g money or I'll shoot you." *Id.* Bunch then grabbed a Taser he kept in his vehicle and used it on the assailant. During the ensuing struggle, the gunman shot Bunch multiple times and also struck Bunch on the back of his head with the gun. Bunch was ultimately able to push the gunman out of the vehicle, at which point he drove away and called his mother, his brother, and a friend, one of whom called 911. Krauss collected Bunch's clothing and cellular telephone as evidence in the case.

{¶ 4} A few days later, Bunch spoke with law enforcement officers again. During that conversation, he admitted he had met a person, later identified as Kelly, over the social media platform SnapChat. Bunch stated that, approximately two weeks after their initial contact, Kelly and he made plans to meet to smoke marijuana and for Bunch to sell marijuana to Kelly. Bunch stated that Kelly provided him with an address at which to meet, and that he (Bunch) put the address into his cellular telephone's mapping system. Bunch stated that, upon his arrival at the agreed upon meeting place, Kelly entered Bunch's automobile with a gun, placed the gun to Bunch's head, and said, "give me your s***. I'm robbing you." Tr. p. 147. Consistent with his first statement, Bunch indicated that he grabbed the Taser and a struggle ensued, during which Bunch was shot in the legs and struck in the back of the head with the gun.

{¶ 5} Following an investigation, Kelly was indicted on one count of aggravated robbery in violation of R.C. 2911.01(A)(1) and one count of felonious assault in violation of R.C. 2903.11(A)(2). Both counts carried attendant firearm specifications.

{¶ 6} A jury trial was conducted in January 2020, following which the jury found Kelly guilty on all charges. The trial court sentenced Kelly to terms of ten years in prison for aggravated robbery and eight years for felonious assault, to be served consecutively,

for a minimum prison term of 18 years and a maximum prison term of 23 years. Kelly was also sentenced to a three-year prison term for each firearm specifications, to be served consecutively to each other and consecutively to the underlying indefinite prison term.

{¶ 7} This appeal followed.

## II. Ineffective Assistance of Counsel

{¶ 8} Kelly's first assignment of error states as follows:

THE APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE.

{¶ 9} Kelly complains that he was denied the effective assistance of counsel. Specifically, he faults trial counsel for failing to (1) file a motion to suppress a pretrial identification; (2) seek dismissal of certain jurors and to exhaust peremptory challenges; and (3) seek a judgment of acquittal at the end of the State's case and the end of the trial.

{¶ 10} When a convicted defendant alleges he has been denied the effective assistance of counsel, he must demonstrate counsel's performance was so deficient that counsel was not functioning as the counsel guaranteed under the Sixth Amendment to the United States Constitution, and that counsel's errors prejudiced him so as to deprive him of a reliable result. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). In assessing counsel's performance, "an objective review of counsel's performance must be conducted in light of professional norms prevailing when the representation took place." *State v. Herring*, 142 Ohio St.3d 165, 2014-Ohio-5228, 28 N.E.3d 1217, ¶ 68, citing *Bobby v. Van Hook*, 558 U.S. 4, 7, 130 S.Ct. 13, 175 L.Ed.2d 255 (2009); *Strickland* at 688.

"Under the deficient-performance prong, the court should 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *Herring* at ¶ 68, quoting *Strickland* at 689. "Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." (Citation omitted). *State v. Jordan*, 2d Dist. Montgomery No. 27208, 2017-Ohio-7342, ¶ 21.

{¶ 11} Kelly first asserts that counsel should have sought suppression of the out-of-court identification made by Bunch. He argues the identification was not reliable because the photographic array was suggestive. Specifically, he notes that five of the six photographs depicted the individual's head and shoulders, while, in contrast, his photograph depicted only his head. He thus claims he looked "like a player in the video game NBA jams with a big head."[1]

{¶ 12} A pretrial identification derived from inappropriately suggestive procedures which cause a likelihood of misidentification violates a defendant's right to due process. *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Courts apply a two-step test to determine the admissibility of a challenged identification: (1) the defendant must demonstrate that the identification procedure was unnecessarily suggestive; and (2) if the defendant meets this burden, the court must consider whether the procedure, under the totality of the circumstances, was so unduly suggestive that it

---

[1] Attached to the State's appellate brief is a picture purportedly depicting a scene from the video game referenced by Kelly. The State asserts the picture is attached as an exhibit in order to "provide a glimpse of the exaggerated heads used" in the game. As the State is aware, this document is not part of the record, and thus is not properly before us.

created a likelihood of irreparable mistaken identification. *State v. Wills*, 120 Ohio App.3d 320, 324, 697 N.E.2d 1072 (8th Dist.1997), citing *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), and *State v. Garner*, 74 Ohio St.3d 49, 61, 656 N.E.2d 623 (1995).

{¶ 13} R.C. 2933.83 governs the administration of photographic lineups and is aimed at preventing the use of unnecessarily suggestive procedures. The statute requires specific procedures for conducting photographic lineups. For example, the statute provides for the use of a person who does not know the suspect's identity (a "blind administrator") to present the photo array to a witness, and the administrator must inform the witness that the suspect may, or may not, be in the lineup. R.C. 2933.83(A) and R.C. 2933.83(B)(5).

{¶ 14} This court has held that a "computerized method of creating photospreads avoids most potential unfairness and almost any claim that the lineup was suggestive." *State v. Beckham*, 2d Dist. Montgomery No. 19544, 2003-Ohio-3837, ¶ 12, citing *State v. Beddow*, 2d Dist. Montgomery Nos. 16197 & 16198, 1998 WL 126876, *2 (Mar. 20, 1998).[2] Moreover, "[a] defendant in a lineup need not be surrounded by people nearly identical in appearance." *State v. Davis*, 76 Ohio St.3d 107, 112, 666 N.E.2d 1099 (1996).

{¶ 15} Kelly does not claim the police failed to comply with R.C. 2933.83. Instead, his argument hinges upon the fact that his head appeared larger than the heads of the other individuals presented in the array. The photo array is before us and we have

---

[2] In this case, there was competent, credible and unrebutted evidence that the officer who compiled the photo array did so using a computerized method.

examined it.[3]   The array contains six color photographs of men.   Kelly's head does appear slightly larger than the others in the array, but all six men otherwise appear similar. They appear to be of approximately the same age with the same hair color, similar short haircuts and similar complexions.

{¶ 16} From our review of the record and the photo array, we cannot say that the minor difference in Kelly's photo was unnecessarily suggestive.   Therefore, we reject Kelly's claim that trial counsel was ineffective for not seeking suppression of the identification.

{¶ 17} Kelly next claims counsel should have excluded four jurors from the jury. He also contends counsel was deficient because she failed to use all available peremptory challenges.   For the reasons set forth in Part III, below, which discusses the contested jurors, we find this argument lacks merit.

{¶ 18} Finally, Kelly contends counsel was deficient for failing to make a Crim.R. 29 motion for acquittal.

{¶ 19} This court has previously stated, "[b]ecause, when faced with a Crim.R. 29 motion for acquittal, a trial court must view the evidence in a light most favorable to the state, '[f]ailure to move for an acquittal under Crim.R. 29 is not ineffective assistance of counsel where the evidence in the State's case demonstrates that reasonable minds can reach different conclusions as to whether the elements of the charged offense[s] have been proved beyond a reasonable doubt, and that such a motion would have been fruitless.' " *State v. Winn*, 173 Ohio App.3d 202, 2007-Ohio-4327, 877 N.E.2d 1020, ¶ 13 (2d Dist.), *affirmed in* 121 Ohio St.3d 413, 2009-Ohio-1059, 905 N.E.2d 154 (2009), citing

---

[3] According to the record, the pictures were part of the Ohio Driver's Licensing system.

*State v. Poindexter*, 2d Dist. Montgomery No. 21036, 2007-Ohio-3461, ¶ 29. *Accord State v. McKinley*, 10th Dist. Franklin No. 02AP-371, 2002-Ohio-7197, ¶ 39. As stated in Part VI, below, the State offered sufficient evidence to prove the elements of each charged offense.

**{¶ 20}** Kelly has failed to demonstrate that counsel's representation was deficient. Therefore, the first assignment of error is overruled.

### III.    Fair and Impartial Jury

**{¶ 21}** The second assignment of error asserted by Kelly states:

THE APPELLANT'S 6TH AMENDMENT RIGHT TO [A] FAIR AND IMPARTIAL JURY WAS VIOLATED.

**{¶ 22}** Kelly contends he was denied a fair trial because four jurors were biased. He also contends the trial court did not permit defense counsel to utilize all available peremptory challenges.

**{¶ 23}** The right to be tried by a fair and impartial jury is a fundamental element of our criminal justice system. The Sixth Amendment to the United States Constitution, which applies to the states under the Fourteenth Amendment, provides that in all criminal prosecutions the accused has the right to trial by an impartial jury. *State v. D.H.,* 169 Ohio App.3d 798, 2006-Ohio-6953, 865 N.E.2d 90, ¶ 49 (10th Dist.)  Additionally, Article I, Section 10 of the Ohio Constitution provides that a criminal defendant is entitled to trial by an impartial jury.

**{¶ 24}** Kelly asserts that Juror Number 3 should have been excluded from the panel because the juror stated he/she "knew the prosecutor."  Tr. p. 25.  When asked

which prosecutor the juror knew, the juror stated, "Marshall." *Id.* As the prosecutor began to ask another question, Juror Number 3 stated, "[o]r a private attorney." *Id.*

{¶ 25} From a reading of this exchange, it appears the juror knew an attorney named Marshall, that the juror initially identified this attorney as a prosecutor, but then, almost immediately, modified the description to an attorney in private practice.[4] No such attorney appeared in the case, nor was such an attorney alleged to be involved with the case. The juror also affirmed that this acquaintance would have no bearing on his/her ability to be fair and impartial. We find no basis to conclude that this juror was biased against Kelly or that Kelly suffered any prejudice stemming from the juror's inclusion on the jury.

{¶ 26} Kelly next complains that Juror Number 5 "works for the sheriff's office." He cites *State v. Kirkbride*, 5th Dist. Muskingum No. C.T. 93-15, 1994 WL 167938 (Apr. 1, 1994), for the proposition that a juror's working relationship with the police requires that juror's exclusion from the panel.

{¶ 27} In *Kirkbride*, a sergeant with the Ohio State Highway Patrol (OSHP) was called as a potential juror. During voir dire, it was determined the sergeant had worked at the Zanesville post of the OSHP for 20 years, and during this time he had worked closely with local law enforcement, including the deputy sheriffs identified as State's witnesses for trial. *Id.* at *4. The defense sought to remove the sergeant for cause alleging that his voir dire responses indicated actual bias. *Id.* However, the trial court denied the request. On appeal, the Fifth District reversed the conviction, concluding that

---

[4] Again, the State makes reference to facts not in the record before us by stating that there is no prosecutor named Marshall employed in the Clark County Prosecutor's Office.

the trial court erred in denying the request to remove for cause.  *Id.* at *6.

{¶ 28} In this case, the juror indicated he/she was employed by the Montgomery County Sheriff's Department as a "jail population manager."  Tr. p. 43.  The juror was questioned by both the prosecutor and defense counsel.  There was no evidence that the juror was acquainted with any Springfield or Clark County law enforcement officers, let alone any of the officers involved in or designated as State's witnesses in this case.  Indeed, there was nothing in this record to indicate whether the juror was a law enforcement officer or a civilian employee or whether the juror worked closely with *any* law enforcement officers.   In any event, the juror asserted his/her ability to be a fair and impartial juror and denied any bias arising by reason of employment.   Based upon this record, we cannot conclude that the trial court erred in permitting Juror Number 5 to be a member of the jury.

{¶ 29} Kelly next asserts that Juror Number 6 should have been excused from jury service because he/she wanted the defendant to take the stand so that his side of the story could be heard and evaluated.  After being informed that the defendant had a constitutional right not to testify, and that the court would instruct the jury that the defendant's failure to testify could not be considered, the juror indicated he/she would be able to follow that instruction and would not penalize Kelly if he did not testify.   On this record, we have no reason to conclude the juror was not truthful or was not capable of complying with the court's instructions.

{¶ 30} Finally, Kelly contends it was error to permit Juror Number 7 to remain on the jury.   Kelly claims the record demonstrated the juror was "trying to hide a very important detail," because he/she did not reveal that he/she "was on a trial before as a

juror] with the presiding prosecutor" until that information was elicited by a question from the prosecutor. We find no merit to the claim that the juror attempted to hide his/her previous jury service. Upon being asked if she/he had been excused from a jury in the past, the juror immediately answered affirmatively. Further, from our reading of the entire voir dire, we cannot discern any other point where the juror was asked a question that would have caused the juror to reveal his/her past jury service.

{¶ 31} We note that defense counsel did not seek to excuse any of these jurors for cause or to exercise a peremptory challenge against them. We also note the record does not support Kelly's claim that counsel was prevented from exercising a peremptory challenge against these specific jurors, and we cannot conclude that the trial court prevented defense counsel from using a peremptory challenge as to any of the jurors.

{¶ 32} Because Kelly has not shown that any of the challenged jurors exhibited bias toward him or caused prejudice to him by their inclusion on the jury, we conclude there is no merit to this assignment of error. Accordingly, the second assignment of error is overruled.

## IV.    Trial Court's Failure to Grant a Mistrial

{¶ 33} Kelly's third assignment of error states:

THE TRIAL COURT ERRED BY NOT GRANTING A MISTRIAL AFTER

THE STATE[']S OPENING REMARKS.

{¶ 34} Kelly asserts that the prosecutor made a remark during the opening statement that was so prejudicial a mistrial was required. Specifically, he objects to the following statement:   "And 741 Sherman Avenue, to confirm that photo ID, is known in

police records as the address that Tommy Kelly, II, the defendant before you, lives at. That address is associated with him – [.]"  Tr. p. 106.   Defense counsel objected to the statement and requested a mistrial, arguing that the statement created the impression that Kelly had prior involvement with the police.   The trial court then gave the following limiting instruction:

> Just because the police may have information about where a person lives,
> doesn't mean that person has ever committed a crime, or been a suspect
> in any other crime, or been in any trouble whatsoever.   So you're not to
> speculate on that issue.

{¶ 35} We review the trial court's decision whether to grant a mistrial under an abuse of discretion standard.   *State v. Gunnell*, 2d Dist. Clark No. 09-CA-0013, 2010-Ohio-4415, ¶ 54.   Generally, an abuse of discretion occurs when a decision is grossly unsound, unreasonable, illegal, or unsupported by the evidence.   *State v. Nichols*, 195 Ohio App.3d 323, 2011-Ohio-4671, 959 N.E.2d 1082, ¶ 16 (2d Dist.).   A decision is unreasonable if there is no sound reasoning process that would support the decision. *State v. Jones*, 2d Dist. Montgomery Nos. 25315 & 25316, 2013-Ohio-1925, ¶ 32; *State v. LeGrant*, 2d Dist. Miami No. 2013-CA-44, 2014-Ohio-5803, ¶ 7.

{¶ 36} We begin by noting that the record to which the State was referring appears to have been a jail intake form related to a prior juvenile case involving Kelly.   The reference at issue was inappropriate.   However, juries are presumed to follow the trial court's instructions.   *State v. Jones*, 90 Ohio St.3d 403, 414, 739 N.E.2d 300 (2000). The trial court instructed the jury not to consider the statement made by the prosecutor and also appropriately instructed the jurors that opening statements are not evidence.

*See Peffer v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 94356, 2011-Ohio-450, ¶ 27.

**{¶ 37}** We cannot conclude that the trial court's response to the situation – the limiting instruction – constituted an abuse of discretion.

**{¶ 38}** The third assignment of error is overruled.

### V.     Extraction Report Admission

**{¶ 39}** The fourth assignment of error provides:

THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PREJUDICIAL ERROR IN ADMITTING PART OF THE CCSO EXTRACTION REPORT.

**{¶ 40}** Kelly contends that the trial court erred by admitting a report generated by the Clark County Sheriff's Office.

**{¶ 41}** Relevant to Kelly's argument, the record shows that the State presented the testimony of Springfield Police Department Detective Dan DeWine, who was assigned to investigate the shooting.   DeWine spoke to Bunch, who admitted he was in Springfield to meet someone to smoke marijuana.   Bunch also admitted the shooting did not occur at a gas station, but instead took place near where the police found him.   When asked if Bunch could identify the shooter, Bunch provided DeWine with the name "TK Kels" as the person with whom he had texted on SnapChat and with whom he was supposed to meet in order to sell and smoke marijuana.   Tr. p. 221.   DeWine testified that even though the police were unable to find a SnapChat account for "TK Kels," they eventually were able to otherwise associate that name with Kelly.   DeWine testified that Kelly's address was

less than a block from where police initially made contact with Bunch.

{¶ 42} DeWine also testified that he asked Bunch if he knew where the shooting took place. Bunch indicated the address could be found in his cellular telephone. DeWine then asked Clark County Sheriff's Office detective Brian Melchi to search Bunch's cell phone to determine whether 741 Sherman Avenue, which was determined to be the address of Kelly's apartment building, was stored in Bunch's telephone.

{¶ 43} Melchi testified that he had specialized training in downloading the content of cellular telephones. He ran a program on Bunch's telephone and searched for address and location history stored on the telephone for October 26, 2019. From that, Melchi printed a three-page report which indicated, in part, that the phone's mapping service showed a timestamp of 9:15 p.m. on October 26, 2019 along with Kelly's address. Melchi testified that he could not determine whether Bunch had actually been at that address or whether the address had merely been inputted into the telephone for an address search. Melchi's report was introduced into evidence and marked as State's Exhibit 34.

{¶ 44} Defense counsel opposed the introduction of the exhibit, arguing that it was not the full text of the actual report and that Melchi had not been able to testify whether the telephone was actually at that address. The trial court overruled the objection on the basis that counsel's argument implicated the weight to be given to the evidence rather than its admissibility.

{¶ 45} Because "a trial court exercises discretion in its decision to exclude or admit evidence, [the] standard of review on appeal is whether the trial court committed an abuse of discretion that amounted to prejudicial error." *State v. Cassel*, 2016-Ohio-3479, 66

N.E.3d 318, ¶ 13 (2d Dist.).

{¶ 46} On appeal, Kelly contends the court abused its discretion in admitting the report. Specifically, he complains "only a part of the report [was] produced" at trial. He further argues the report was prejudicial because (1) Bunch had other addresses and locations in the telephone for the same day, (2) the name given by Bunch for the SnapChat account was never linked to Kelly, and (3) the report did not include the "alleged text" sent from Bunch to Kelly announcing his arrival.

{¶ 47} It appears that trial counsel believed the program used by Melchi should have generated all the addresses located in Bunch's cellular telephone. But Melchi testified that the search was limited to Kelly's address, but that the location printout page, which became part of the report, contained other addresses which appeared on the location printout page.

{¶ 48} Further, Melchi testified that the report submitted into evidence was the full report he generated. He testified that it contained the location printout page and a standard two-page summary with the Sheriff's Office logo, the case number for the agency requesting the download, and "basic information about the serial number and things of the phone." Tr. p. 203

{¶ 49} The record supported a finding that Exhibit 34 contained Melchi's entire report and research product. The search performed by Melchi did not include a search for any SnapChat messages, and Melchi did not determine whether Kelly had a SnapChat account. Thus, we conclude that the record did not support Kelly's claim that the report contained more information than was submitted at trial. On this record, it cannot be concluded that the trial court abused its discretion by admitting the report into evidence.

**{¶ 50}** The fourth assignment of error is overruled.

## VI.    Sufficiency and Manifest Weight of the Evidence

**{¶ 51}** Kelly's fifth and sixth assignments of error state as follows:

THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT APPELLANT[']S

CONVICTION FOR ALL COUNTS.

APPELLANT[']S CONVICTION FOR COUNT 1 AND COUNT 2 WAS

AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶ 52}** Kelly contends the State did not present evidence sufficient to support his convictions, and that the convictions were against the weight of the evidence.

**{¶ 53}** "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law."   *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).   In such situations, we apply the test from *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), which states:

An appellate court's function when reviewing the sufficiency of the evidence

to support a criminal conviction is to examine the evidence admitted at trial

to determine whether such evidence, if believed, would convince the

average mind of the defendant's guilt beyond a reasonable doubt.   The

relevant inquiry is whether, after viewing the evidence in a light most

favorable to the prosecution, any rational trier of fact could have found the

essential elements of the crime proven beyond a reasonable doubt.

(Citation omitted). *Id.* at paragraph two of the syllabus.

**{¶ 54}** In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Wilson* at ¶ 12.   In this situation, a " 'court review[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' "   *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).   *Accord State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 193.   "The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence."   *State v. Adams*, 2d Dist. Greene Nos. 2013-CA-61, 2013-CA-62, 2014-Ohio-3432, ¶ 24, citing *Wilson* at ¶ 14.

**{¶ 55}** "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11.   *Accord State v. Winbush*, 2017-Ohio-696, 85 N.E.3d 501, ¶ 58 (2d Dist.).   As a result, "a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Citations omitted.) *State v. Braxton,* 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15.

{¶ 56} Importantly, "[b]ecause the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997).

{¶ 57} Kelly asserts that his convictions were not against the manifest weight of the evidence. In support, Kelly argues that Bunch's testimony was unreliable, given that he initially lied to the police regarding the location of the incident. He further contends that the combination of the lack of credible testimony from Bunch, the suggestive photographic identification array, the lack of DNA found on the Taser, the lack of evidence of a shooting in front of Kelly's home, and Kelly's evidence concerning his whereabouts during the day of the offense required a conclusion that the jury lost its way in convicting him.

{¶ 58} We note that, during his testimony, Bunch admitted that he initially was untruthful with the police regarding where and why the shooting took place. He explained that he was initially afraid he would get into trouble because he had marijuana he was attempting to sell. Further, the jury was made aware that there was no forensic evidence gathered in front of Kelly's house and that Kelly's DNA was not found on the Taser used by Bunch. However, there was evidence that DNA, other than Bunch's, was found on the Taser, but the sample was not sufficient for analysis. Thus, the jury was clearly aware of these issues and still found Bunch's testimony credible.

{¶ 59} Regarding the photographic array, as discussed above, we agree with the trial court's conclusion that the array was not unduly or unnecessarily suggestive.

{¶ 60} Finally, we note that while Kelly did present testimony from his girlfriend and other friends which he claimed provided an alibi defense, there was no direct testimony that he was with any of these individuals at the time of the offenses.

{¶ 61} From our review of the record, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed.

{¶ 62} We next address the sufficiency of the evidence. Kelly was convicted of felonious assault and aggravated robbery. Felonious assault is proscribed by R.C. 2903.11, which states in pertinent part, "[n]o person shall knowingly * * * [c]ause serious physical harm to another." R.C. 2903.11(A)(1). Aggravated robbery is prohibited by R.C. 2911.01(A)(1), which states, in pertinent part, "[n]o person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."

{¶ 63} Bunch testified that he and Kelly made plans to meet in order to smoke marijuana and for Kelly to purchase marijuana from Bunch; Bunch drove to Kelly's residence, where Kelly entered Bunch's vehicle while pointing a gun at Bunch. Bunch further testified Kelly demanded Bunch's "s***" and grabbed a package of marijuana that was in the center console of the vehicle. Bunch testified that he and Kelly then struggled, during which time Bunch was hit in the head and shot several times in the legs. And Bunch identified Kelly as his assailant.

{¶ 64} The jury was free to believe or disbelieve all, part, or none of Bunch's testimony. *State v. Dewberry*, 2d Dist. Montgomery No. 27434, 2020-Ohio-691, ¶ 44. Bunch's testimony, if believed, was sufficient to support the convictions.

{¶ 65} We conclude that the State presented evidence sufficient to support the convictions and that the convictions were not against the manifest weight of the evidence. Accordingly, the fifth and sixth assignments of error are overruled.

## VII.    Merger Analysis

{¶ 66} The seventh assignment of error states:

THE TRIAL COURT ERRED IN FAILING TO MERGE APPELLANT['] [SIC]

SENTENCES.

{¶ 67} Kelly asserts that his convictions for felonious assault and aggravated robbery should have been merged for purposes of sentencing.

{¶ 68} The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 10, protect a defendant against multiple punishments for the same offense. *State v. Martello*, 97 Ohio St.3d 398, 2002-Ohio-6661, 780 N.E.2d 250, ¶ 7; *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). This constitutional protection is codified at R.C. 2941.25, which provides:

(A) Where the same conduct by defendant can be construed to constitute

two or more allied offenses of similar import, the indictment or information

may contain counts for all such offenses, but the defendant may be

convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 69} In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, the Ohio Supreme Court held that "under R.C. 2941.25(B), a defendant charged with multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *Id.* at ¶ 13. The defendant bears the burden of demonstrating that he is entitled to merger at sentencing. *State v. Mughni*, 33 Ohio St.3d 65, 67, 514 N.E.2d 870 (1987). When reviewing a determination regarding merger, we apply a de novo standard of review. *In re K.P.*, 1st Dist. Hamilton No. C-180037, 2018-Ohio-4972, ¶ 4, citing *State v. Shelton*, 1st Dist. Hamilton No. C-170547, 2018-Ohio-3895, ¶ 44; *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 1.

{¶ 70} In this case, the trial court simply stated, "I do find * * * there were two separate offenses here and that they do not merge for purposes of sentencing." Sentencing Tr. p. 7. We agree.

{¶ 71} Kelly argues that both crimes occurred simultaneously and that the offense of felonious assault was committed in furtherance of the robbery. However, from our review of the record, the evidence demonstrated that Kelly entered the vehicle with his gun pointed at Bunch and picked up the package of marijuana. At that point, the offense

of robbery was complete. Thereafter, Kelly committed felonious assault when he struck Bunch on the back of the head and shot him multiple times. The evidence showed that the felonious assault did not occur until Bunch pulled out his Taser and tried to stun Kelly. Thus, the evidence supported the conclusion that the felonious assault had a separate animus – i.e., to respond to Bunch's attempted defense — from the robbery which was already accomplished.

{¶ 72} Additionally, courts have held that the use of greater force than necessary to accomplish the act of robbery demonstrates a separate animus. *See State v. Sutton*, 8th Dist. Cuyahoga Nos. 102300 and 102302, 2015-Ohio-4074*, ¶* 62; *State v. Johnson*, 6th Dist. Lucas No. L-16-1282, 2018-Ohio-1657, ¶ 45; *In re K.P.*, 1st Dist. Hamilton Nos. C-180037, C-180038, and C-180039, 2018-Ohio-4972, ¶ 9.

{¶ 73} We agree with the trial court's decision denying merger of the two offenses. Accordingly, the seventh assignment of error is overruled.

## VIII.  Consecutive Sentence Analysis

{¶ 74} The eighth assignment of error states the following:

THE TRIAL COURT ERRED IN ISSUING CONSECUTIVE SENTENCES.

{¶ 75} Kelly challenges the trial court's decision to impose consecutive sentences.

{¶ 76} Under R.C. 2929.14(C)(4), a trial court may impose consecutive sentences if the following findings are made:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is

necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 77} When the R.C. 2929.14(C)(4) findings are made, "an appellate court may not reverse the trial court's imposition of consecutive sentences unless it first clearly and convincingly finds that the record does not support the trial court's findings." *State v. Barnett*, 2d Dist. Montgomery No. 27660, 2018-Ohio-4133, ¶ 92, quoting *State v. Withrow*, 2d Dist. Clark No. 2015-CA-24, 2016-Ohio-2884, ¶ 38. "This is a very deferential standard of review, as the question is not whether the trial court had clear and convincing evidence to support its findings, but rather, whether we clearly and

convincingly find the record fails to support the trial court's findings." (Citations omitted.) *State v. Cochran* 2d Dist. Clark No. 2016-CA-33, 2017-Ohio-217, ¶ 7.

{¶ 78} Kelly does not claim the court failed to make the requisite findings. Instead, he appears to argue that the record did not support the imposition of consecutive sentences because his sentence was longer "than he has lived on this Earth." We construe this statement as a claim of disproportionality.

{¶ 79} In reviewing the record, we note that the court specifically found consecutive sentences were necessary to protect the public and to punish Kelly, and that consecutive sentences were not disproportionate to the seriousness of his conduct and the danger he posed to the public. In addition, the trial court found "at least two of the multiple offenses were committed as part of one or more courses of the conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct."

{¶ 80} Since the trial court made the proportionality finding required by R.C. 2929.14(C)(4), we look to whether we can find by clear and convincing evidence that this finding was not supported by the record. "The R.C. 2929.14(C)(4) proportionality finding requires the trial court to find 'that consecutive sentences are not disproportionate to the seriousness of the offender's conduct <u>and</u> to the danger the offender poses to the public * * *.' (Emphasis added.) Thus, the proportionality analysis considers the defendant's conduct and whether the offender poses a future danger to the public. Given this linkage, a proportionality analysis "does not occur in a vacuum, but, instead, focuses upon the defendant's current conduct and whether this conduct, in conjunction with the

defendant's past conduct, allows a finding that consecutive service is not disproportionate." *State v. Crim*, 2nd Dist. Clark No. 2018-CA-38, 2018-Ohio-4996, ¶ 11.

{¶ 81} Kelly's criminal conduct includes a juvenile criminal history of robbery and felonious assault. Further, Kelly was convicted of domestic violence and sentenced to a term of probation in March 2019. The instant offenses involved extremely violent conduct which caused significant physical harm to the victim. Though it may not reflect the sentencing decision we would have made, on this record, we cannot conclude that the trial court's proportionality finding was clearly and convincingly not supported by the record.

{¶ 82} The eighth assignment of error is overruled.

## IX. Individual Sentence Analysis

{¶ 83} Kelly's ninth assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING THE APPELLANT TO A NEAR MAXIMUM PRISON TERM.

{¶ 84} In his final assignment of error, Kelly asserts the trial court erred by sentencing him to more than the minimum prison term allowed by statute without making the findings necessary for imposing a maximum sentence under R.C. 2929.14(C). He also contends the trial court did not consider the statutory criteria set out in R.C. 2929.11 and R.C. 2929.12.

{¶ 85} "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum * * * sentences." *State v. King*, 2013-Ohio-2021, 992

N.E.2d 491, ¶ 45 (2d Dist.).   However, a trial court must consider the statutory criteria that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12.   *State v. Leopard*, 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

{¶ 86} On December 18, 2020, the Ohio Supreme Court decided *State v. Jones*, Slip Opinion No. 2020-Ohio-6729, __ N.E.3d __.   The Supreme Court noted that R.C. 2953.08(G)(2)(a) allows "appellate courts to modify or vacate a sentence if it clearly and convincingly finds that 'the record does not support the sentencing court's findings under' certain specified statutory provisions.   But R.C. 2929.11 and R.C. 2929.12 are not among the statutory provisions listed in R.C. 2953.08(G)(2)(a)."   *Jones* at ¶ 28, quoting R.C. 2953.08(G)(2)(a).   From this, the Supreme Court concluded that R.C. 2953.08(G)(2)(a) does not provide a basis to modify or vacate a sentence because it is not supported under R.C. 2929.11 and R.C. 2929.12.   *Id.* at ¶ 29.

{¶ 87} The *Jones* decision also noted that R.C. 2953.08(G)(2)(b) permits an appellate court to modify or vacate a sentence if it is "otherwise contrary to law."   *Id.* at ¶ 32, quoting R.C. 2953.08(G)(2)(b).   But the Supreme Court ruled that an appellate court may not vacate or modify a sentence based upon the conclusion the sentence is contrary to law because it "is not supported under R.C. 2929.11 and R.C. 2929.12."   *Id.* at ¶ 39.

{¶ 88} The sentencing hearing record reveals the trial court's consideration of R.C. 2929.11 and R.C. 2929.12.   Given this and the *Jones* ruling, there is no basis for this court to modify or vacate Kelly's sentence upon a conclusion that the sentence was not supported by the R.C. 2929.11 purposes of felony sentencing or the R.C. 2929.12 sentencing factors.

{¶ 89} Since the trial court's sentence on each count was within the statutory range and the record reflects the trial court's consideration of R.C. 2929.11 and R.C. 2929.12, Kelly's ninth assignment of error is overruled.

## X.    Conclusion

{¶ 90} All of Kelly's assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies sent to:

John M. Lintz
John Rutan
Hon. Douglas M. Rastatter