[Cite as *State v. Stewart*, 2025-Ohio-1397.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 30278 |
| | : | |
| v. | : | Trial Court Case No. 2023 CR 01932 |
| | : | |
| BRITTANY A. STEWART | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on April 18, 2025

. . . . . . . . . . .

DAVID R. MILES, Attorney for Appellant

MATHIAS H. HECK, JR., by TRISTAN D. DIEGEL, Attorney for Appellee

. . . . . . . . . . . .

HUFFMAN, J.

{¶ 1} Brittany A. Stewart appeals from her convictions for one count of felonious assault, two counts of vehicular assault, and one count of operating a motor vehicle while under the influence (OVI). She challenges the propriety of her sentences and the validity of her guilty plea. Because the trial court's judgment entry does not reflect the sentence

is imposed at the sentencing hearing on the felonious assault, the judgment of the trial court is reversed as to the sentence for felonious assault only, and the matter is remanded for the court to issue a corrected entry nunc pro tunc. In all other respects, the judgment of the trial court is affirmed.

## Facts and Procedural History

{¶ 2} On December 11, 2022, Stewart was involved in a collision near 375 West Spring Valley Pike in Montgomery County; Stewart and three other people were seriously injured. As a result, Stewart was indicted on three counts of aggravated vehicular assault and two counts of OVI. She pled not guilty and subsequently filed a motion to suppress evidence.

{¶ 3} On July 16, 2024, a bill of information was issued that charged one count of felonious assault (serious physical harm) (Count 1), two counts of vehicular assault (Counts 2 and 3), and one count of OVI (Count 4). Stewart executed a waiver of indictment and consented to proceed on the bill of information. The same day, she withdrew her motion to suppress and entered guilty pleas to the charges in the bill of information.

{¶ 4} At the sentencing hearing, the trial court imposed an indefinite sentence of four to six years on the felonious assault under the Reagan Tokes Act, and it provided the advisements required for sentencing under that Act. However, the judgment entry sentenced Stewart to a definite prison term of four years for felonious assault. In all other respects, the sentences imposed were consistent: 11 months on each count of vehicular assault, and 180 days of local incarceration for OVI. The sentences for vehicular assault

were to be served concurrently with one another but consecutively to the sentence for felonious assault, and the sentence for OVI was to be served concurrently to all other counts. The court also suspended Stewart's driver's license for three years and imposed a mandatory fine of $375.

{¶ 5} Stewart asserts three assignments of error. Her first assignment of error is as follows:

APPELLANT'S GUILTY PLEAS WERE INVALID.

{¶ 6} Stewart argues that the trial court induced her guilty plea by informing her that she would receive the minimum driver's license suspension and that the suspension would be retroactive to the date of the offense. Stewart also asserts that the victims and law enforcement were agreeable to community control and that the trial court did not inform her that there was a presumption of imprisonment for a second-degree-felony felonious assault. She asks that her conviction be reversed so that she can withdraw her plea and resubmit her motion to suppress.

{¶ 7} The State responds that Stewart understood the effect of her plea and that any alleged error relating to the driver's license suspension was harmless, because the suspension will expire before her prison term is served. The State also asserts that the trial court was not required to notify Stewart that a prison term was presumed on the felonious assault offense.

{¶ 8} "A plea of guilty is a complete admission of guilt." *State v. Leonard*, 2017-Ohio-8421, ¶ 13 (2d Dist.), citing *State v. Faulkner*, 2015-Ohio-2059, ¶ 9 (2d Dist.). "A guilty plea waives all appealable errors . . . except to the extent that the errors precluded

the defendant from knowingly, intelligently, and voluntarily entering his or her guilty plea." *Id.*, citing *State v. Frazier*, 2016-Ohio-727, ¶ 81 (2d Dist.).

{¶ 9} Due process requires that a defendant's plea be knowing, intelligent, and voluntary. *Boykin v. Alabama*, 395 U.S. 238 (1969); *State v. Harris*, 2021-Ohio-1431, ¶ 15 (2d Dist.). In accepting a plea, the trial court must follow the mandates of Crim.R. 11(C). *State v. Brown*, 2012-Ohio-199, ¶ 13 (2d Dist.). "[T]he rule 'ensures an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made.' " *State v. Dangler*, 2020-Ohio-2765, ¶ 11, quoting *State v. Stone*, 43 Ohio St.2d 163, 168 (1975).

{¶ 10} Crim.R. 11(C)(2)(c) requires that a defendant be advised of certain constitutional rights, and strict compliance with this part of the rule is required. *State v. Thompson*, 2020-Ohio-211, ¶ 5 (2d Dist.). If a trial court fails to strictly comply with Crim.R. 11(C)(2)(c), "the defendant's plea should be deemed invalid on appeal." *State v. Hutchins*, 2021-Ohio-4334, ¶ 7 (2d Dist.).

> Crim.R. 11(C)(2)(a) requires that a trial court determine whether a defendant is "making [a] plea voluntarily," and Crim.R. 11(C)(2)(b) requires that the court inform the defendant of the consequences of the plea. Given that these parts of the rule relate to nonconstitutional issues, the "defendant must affirmatively show prejudice to invalidate [a] plea" where the trial court fails to comply fully with Crim.R. 11(C)(2)(a)-(b). (Citation omitted.) [*Dangler* at] ¶ 14; *State v. Rogers*, 2020-Ohio-4102, . . . , ¶ 16 (12th Dist.).

*Id.* at ¶ 8. To show that prejudice as a result of the trial court's partial noncompliance with Crim.R. 11(C)(2)(a)-(b), the defendant must demonstrate that he or she would not otherwise have entered the plea. *State v. Thompson*, 2020-Ohio-211, ¶ 5 (2d Dist.). However, where a trial court completely fails to comply with Crim.R. 11(C)(2)(a)-(b), a defendant's plea should be invalidated on appeal, and the defendant need not show prejudice. *Id.*, citing *Dangler* and *Roger*s.

{¶ 11} To satisfy the requirement that the court inform the defendant of the effect of the plea pursuant to Crim.R. 11(C)(2)(b), a trial court "must inform the defendant, either orally or in writing, of the language in Crim.R. 11(B), which defines 'effect of guilty plea' as 'a complete admission of the defendant's guilt.' " *State v. Evans,* 2022-Ohio-2890, ¶ 9 (2d Dist.), quoting *State v. Portis,* 2014-Ohio-3641, ¶ 11 (2d Dist.). A defendant who has entered a guilty plea without asserting actual innocence is presumed to understand that he or she has completely admitted guilt. *Id.*, quoting *Portis,* quoting *State v. Griggs*, 2004-Ohio-4415, ¶ 10. We have found substantial compliance when the plea form includes the required advisements and the defendant indicates at the plea hearing that he or she has read and understood the plea form. *State v. Jones*, 2024-Ohio-3034, ¶ 20 (2d Dist.), citing *State v. Campbell*, 2021-Ohio-2053 (2d Dist.). *See also State v. Miller*, 2017-Ohio-478 (2d Dist.); *State v. Vanover*, 2007-Ohio-1057 (2d Dist.).

{¶ 12} At Stewart's plea hearing, the trial court advised her of the "deal" the State was offering, that sentencing would be deferred until a presentence investigation was conducted, and that the sentence was up to the judge. The court also informed Stewart that her lawyer was "certainly going to advocate" that she be put on community control,

but that the court would not be bound by that. The court also acknowledged that the victims were not opposed to community control and, according to the prosecutor, the victims and law enforcement were willing to defer to the judge on the appropriate sentence.

{¶ 13} The court then inquired whether Stewart understood that the sentence was entirely up to judge and that there was no promise of community control, notwithstanding that the victims were "expressing . . . mercy"; Stewart indicated that she understood and chose to proceed. Defense counsel also agreed with this representation.

{¶ 14} Stewart advised the court that she was a U.S. citizen, was 33 years old, was six months away from graduating from DeVry University, and could read and understand English. She also stated that she had reviewed the plea forms with counsel, understood them, and was not under the influence of alcohol or any other condition that made it difficult for her to understand the proceedings.

{¶ 15} As to the potential sentence, the court advised Stewart that the felonious assault charge, a second-degree felony, was punishable by a definite prison term of two to eight years (being the minimum), which the trial court would pick, and then the "indeterminate" (or maximum) sentence would be determined by adding half of the minimum number chosen by the court for the minimum sentence. The court provided Stewart with the advisements required by the Reagan Tokes Act and told her and that the offense carried mandatory post-release control for up to three years but not less than 18 months. The court stated that it would not impose any fines on the felonies. Stewart acknowledged her understanding of the potential sentences for the felonious assault

offense.

{¶ 16} The court advised Stewart that the two counts of vehicular assault were fourth degree felonies punishable by prison terms of 6 to 18 months each, with non-mandatory post-release control of up to two years on each count. The court further told Stewart that there was a mandatory driver's license suspension on each of those two counts for a period of not less than a year, but no more than five years. The court said: "I'll tell you right now I will pick the minimum period of time of a year" and "I'll make it retroactive to the date of the offenses." Stewart acknowledged her understanding of the potential sentences for vehicular assault.

{¶ 17} With respect to the misdemeanor OVI offense, the court advised Stewart that it carried a mandatory fine in a range of $375 to $1,075 and that the court would impose the minimum mandatory fine of $375. Defense counsel advised that the misdemeanor offense also carried a mandatory driver's license suspension of one to three years, and the court stated that it would impose the minimum mandatory suspension of one year, retroactive to the date of the offense. Stewart acknowledged her understanding of the penalties for the misdemeanor offense.

{¶ 18} The court informed Stewart about post-release control and the consequences of violating it. The court also stated that Stewart's lawyer would certainly argue that she should be put on community control and that the State had agreed to remain silent as to the sentence; the trial court would decide what to do. The court confirmed Stewart's understanding that she had been given no promise of community control.

{¶ 19} The court explained the Reagan Tokes Act sentencing scheme to Stewart; the transcript indicates that there was no audible response when the court asked if she understood. The court inquired if Stewart thought there were any other elements of her plea agreement that had not been discussed and if anyone had threatened her or forced her to plead guilty; in both instances, the transcript reflects no audible response. Similarly, the transcript further reflects no audible response when Stewart was asked if she understood that a guilty plea was a complete admission of guilt to the charges in the bill of information.

{¶ 20} The court explained that, upon accepting Stewart's pleas, it would find her guilty, file her plea forms, and enter judgment. The court further advised Stewart that a presentence investigation report (PSI) would be completed and reviewed by the State, defense counsel, and the court. The court stated the PSI may convince the court to put Stewart on community control but reminded her that she had not been promised community control. Stewart acknowledged her understanding.

{¶ 21} The court thoroughly advised Stewart regarding the constitutional rights she would be waiving by entering her plea, which are not at issue in this appeal. She acknowledged her understanding; she stated that she understood the charges and acknowledged the facts set forth in the charges to be true. Stewart further acknowledged that she had discussed all the elements of her offenses and any possible defenses or motions with defense counsel. Stewart told the court that she was satisfied with defense counsel's representation and that she was entering her pleas of her own free will.

{¶ 22} The court then stated to Stewart: "If you understand the charges, your

rights, the penalties this Court could impose if you're found guilty, and if that's what you want to do, give up your rights and plead guilty to the charges against you, sign the waiver and plea forms." Stewart did so. The court asked if there was anything about the proceedings that Stewart did not understand or if she had any questions, and she replied that there was not.

{¶ 23} Stewart entered her pleas, and the court found that she understood the rights she was waiving, the nature of the offenses to which she pled guilty, the maximum penalties that could be imposed, and her eligibility for community control. The court found that she understood the effect of her guilty pleas, that they were made voluntarily, and that there was a factual basis for the guilty pleas. The court accepted Stewart's pleas and ordered the PSI.

{¶ 24} Stewart's plea forms also stated that she understood the nature of the charges and pleas and that, upon acceptance of her pleas, the court could proceed to judgment and sentence. Stewart acknowledged that she had read the forms and reviewed them with defense counsel.

{¶ 25} Stewart did not assert her innocence in the trial court, and the court fully informed her of her rights and the consequences of her pleas. As such, we find that Stewart's argument that she did not understand the effect of her pleas lacks merit.

{¶ 26} Regarding the driver's license suspension, the court advised Stewart at the plea hearing that she was subject to a suspension of one to five years for the vehicular assaults and one to three years for the OVI. The plea forms also contained this information, including that the potential suspensions were mandatory. In this respect,

the trial court substantially complied with Crim.R. 11(C)(2)(a). The trial court told Stewart at the plea hearing that it would impose a license suspension for her offenses of only one year, retroactive to the date of the offenses. However, at the sentencing hearing, the trial court imposed a three-year suspension. The judgment entry also imposed a three-year license suspension on the vehicular assault and OVI offenses, to be served concurrently.

{¶ 27} Although the trial court's statement at the plea hearing that it would suspend Stewart's license for only one year retroactive to the date of her offenses was inconsistent with the suspension it ultimately imposed, we cannot conclude that she was prejudiced by this error. Stewart appears to have believed that she would get community control (despite the trial court's repeated advisements that community control was not guaranteed); based on that assumption, she suggests that she was induced to enter her pleas on the promise of a retroactive one-year suspension, which would have expired prior to her sentencing. But she was not guaranteed community control, there was a presumption of imprisonment for the felonious assault offense, and the driver's license suspensions were mandatory. Any suggestion that Stewart would be placed on community control and free to drive upon disposition defies logic.

{¶ 28} There is nothing in the record to suggest that Stewart would not have entered her pleas but for the court's statement regarding the one-year suspension. She did not object at sentencing to the imposition of a longer suspension, and she did not file a motion to withdraw her pleas. Moreover, Stewart will have served her three-year suspension before her release from prison.

{¶ 29} Other factors likely weighed more heavily in her decision to enter a plea agreement. Stewart faced a lengthy prison term, the evidence of her guilt was conclusive, and the victims sustained extensive, catastrophic injuries. Stewart could have reasonably concluded that avoiding a trial by jury and its attendant consequences was in her best interest. She also may have been motivated by a desire to avoid a more severe penalty. She was originally charged with aggravated vehicular assault pursuant to R.C. 2903.08, which would have resulted in a mandatory sentence and a mandatory license suspension for a definite period of two to ten years. Stewart was likely induced to plead guilty to avoid those mandatory terms. Importantly, Stewart does not assert in her brief that she would not have entered her pleas if she had known that her license would be suspended for three years.

{¶ 30} Finally, Stewart was repeatedly advised that whether she received community control was a matter for the trial court to decide. Although R.C. 2929.13(D) creates a presumption in favor imprisonment for second-degree felonies, the court was not required to notify Stewart of that presumption regarding the felonious assault. We have rejected that argument in the past. *See State v. Good*, 2023-Ohio-1510 (2d Dist.) (when accepting a guilty plea, a trial judge is not required to inform a defendant of the statutory presumption in favor of incarceration for first and second-degree felonies and to ascertain that the defendant understands that statutory presumption).

{¶ 31} Stewart's first assignment of error is overruled.

{¶ 32} We will consider Stewart's second and third assignments of error together: APPELLANT'S SENTENCE IS CONTRARY TO LAW.

THE TRIAL COURT ERRED IN IMPOSING CONSECUTIVE SENTENCES.

{¶ 33} Stewart acknowledges that her sentence fell within the authorized statutory range and that the trial court considered R.C. 2929.11 and R.C. 2929.12. However, in her second assignment of error, she expresses concern about the trial court's statement at disposition that, "but for the intervention of serendipity, Ms. Stewart and the three victims would all be dead." According to Stewart, "[s]erendipity is analogous to being lucky," and any suggestion that she was lucky or that the circumstances could have been worse involved "a factor or consideration extraneous to the provisions of R.C. 2929.11 and R.C. 2929.12." She asserts that "[t]his is more so" when the victims and law enforcement did not oppose community control sanctions.

{¶ 34} In her third assignment of error, Stewart argues that there is a presumption that multiple prison sentences should be served concurrently, and she challenges the trial court's finding that her history of criminal conduct demonstrated that consecutive sentences were necessary to protect the public from future crime by her. She notes her young age, her "minimal history of criminal conduct" and the fact that it was mostly drug-related, her low ORAS (risk of recidivism) score, and her extreme remorse. Stewart also asserts that consecutive sentences are disproportionate to the seriousness of her conduct, arguing that she is not a violent offender or a danger to the public. According to Stewart, this Court should reverse the sentence or modify it to community control.

{¶ 35} "The trial court has full discretion to levy any sentence within the authorized statutory range, and it is not required to make any findings or articulate its reasons for imposing a maximum or more than minimum sentence." *State v. Goss*, 2024-Ohio-2648,

¶ 8 (2d Dist.), citing *State v. Jones*, 2021-Ohio-325, ¶ 85 (2d Dist.)  When reviewing felony sentences, a court of appeals must apply the standard of review set forth in R.C. 2953.08(G).  *State v. Williams*, 2022-Ohio-2897, ¶ 18 (2d Dist.), citing *State v. Farra*, 2022-Ohio-1421, ¶ 73 (2d Dist.).  Under that statute, an appellate court may increase, reduce, or modify a sentence, or vacate it altogether and remand for resentencing, if it "clearly and convincingly finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law."  *State v. Worthen*, 2021-Ohio-2788, ¶ 13 (2d Dist.).

{¶ 36} An appellate court may not independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12.  *State v. Bartl*ey, 2023-Ohio-2325, ¶ 9 (2d Dist.), citing *State v. Jones*, 2020-Ohio-6729, ¶ 42.  "The inquiry is simply whether the sentence is contrary to law."  *Id.*  "A sentence is contrary to law when it falls outside the statutory range for the offense or if the sentencing court does not consider R.C. 2929.11 and 2929.12."  *Id.*, citing *State v. Dorsey*, 2021-Ohio-76, ¶ 18 (2d Dist.).

{¶ 37} R.C. 2929.14(C)(4) permits the trial court to impose multiple prison terms on an offender convicted of multiple offenses and to require the offender to serve the prison terms consecutively under certain conditions. It states:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender

and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

. . .

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶ 38}** "On appeals involving the imposition of consecutive sentences, R.C. 2953.08(G)(2)(a) directs the appellate court 'to review the record, including the findings underlying the sentence' and to modify or vacate the sentence 'if it clearly and convincingly finds . . . [t]hat the record does not support the sentencing court's findings' " under R.C. 2929.14(C)(4). *State v. Bonnell*, 2014-Ohio-3177, ¶ 28. "Thus, the record must contain a basis upon which a reviewing court can determine that the trial court made the findings required by R.C. 2929.14(C)(4) before it imposed consecutive sentences." *Id.* In these instances, the trial court must state the required findings during the sentencing hearing to provide notice to the offender and defense counsel and should also "incorporate its statutory findings into the sentencing entry." *Id.* at ¶ 29. "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *Id.* at ¶ 37.

**{¶ 39}** At sentencing, the court indicated that it had reviewed the PSI in its entirety.

The court noted, "but for the intervention of serendipity, Ms. Stewart and her three victims would all be dead. They survived a head-on collision. They all suffered serious physical harm." The court stated that it had "considered the principles and the overriding purposes of sentencing including avoiding unnecessary burden upon the government and its resources," the seriousness and the recidivism factors of the code, the requirements of R.C. 2929, and any other sentencing requirements imposed by the legislature in the Revised Code.

{¶ 40} On the felonious assault, the trial court imposed an indefinite prison term of four to six years at the sentencing hearing and explained how the provisions of the Reagan Tokes Act would determine the release date. The court also provided the advisements required under the Reagan Tokes Act. With respect to consecutive sentencing, the court found that it was required to protect the public from future crime and to punish Stewart and that consecutive sentences were not disproportionate to the seriousness of her conduct and to the danger she posed to the public. Finally, the court found that Stewart's history of criminal conduct demonstrated that consecutive sentencing was necessary to protect the public from future crime by her. Many of these same findings were contained in the judgment entry, but the court imposed a definite prison sentence of four years in the entry, rather than an indefinite sentence of four to six years.

{¶ 41} The PSI reflected that Stewart had previously been granted intervention in lieu of conviction for charges of receiving stolen property and aggravated possession of drugs in 2010, and it was terminated successfully. She had also completed a weekend intervention program for an OVI conviction in 2016. Stewart had been convicted in 2021

of unauthorized use of a credit card; she received a suspended sentence and fine and was ordered to have no contact with WalMart.

{¶ 42} The PSI also stated that Stewart had struck the victims' vehicle with her own vehicle at 55 miles per hour with no pre-impact breaking, causing substantial injuries to the passengers in the other vehicle. According to the PSI, nurses at the hospital struggled to draw blood from Stewart due to her "veins being severely damaged" from drug use; they ultimately had to extract blood from her jugular vein. (Stewart admits in her appellate brief that her blood tested positive for fentanyl and cocaine.)

{¶ 43} In our view, the court's "serendipity" comment on which Stewart focuses part of her argument does not affect our analysis of whether her sentence was appropriate, and Stewart does not explain why it should. R.C. 2929.112 does not provide an exclusive list of factors for the court to consider; the court may consider any factors relevant to the purposes and principles of sentencing. Here, given the nature of the collision and the extensive injuries to the victims, it was relevant to the court that they were fortunate to have survived.

{¶ 44} However, we conclude that the discrepancy between what was stated at the sentencing hearing and in the judgment entry about the felonious assault sentence is problematic (indefinite four to six years versus definite four years). Because the trial court was required under the Reagan Tokes Act to impose an indefinite sentence on the second-degree-felony felonious assault offense, we presume the court intended to impose the sentence articulated at the sentencing hearing. Therefore, this matter must be remanded for the trial court to issue a nunc pro tunc entry correcting the error in the

judgment entry. Stewart's second assignment of error is sustained as to the sentence for felonious assault only and overruled in all other respects.

{¶ 45} Regarding Stewart's third assignment of error, at the sentencing hearing and again in its judgment entry, the trial court concluded that consecutive sentences were necessary in this case to protect the public from future crime and to punish Stewart, that consecutive sentences were not disproportionate to the seriousness of Stewart's conduct and to the danger that she posed to the public, and that her criminal history showed that consecutive service was necessary to protect the public from her.

{¶ 46} We cannot conclude that the record does not support the trial court's sentencing findings under R.C. 2929.14(C)(4). The trial court had no obligation to state reasons to support its findings. By making the requisite findings at the time it imposed Stewart's consecutive prison sentences, the trial court sentenced Stewart in accordance with the requirements in R.C. 2929.14(C). Thus, we cannot conclude that the trial court erred in imposing consecutive sentences. Stewart's third assignment of error is overruled.

{¶ 47} The judgment of the trial court is reversed with respect to the sentence for felonious assault and is remanded for the trial court to file a nunc pro tunc entry correcting the sentence imposed for felonious assault. In all other respects, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and HANSEMAN, J., concur.